## In re BALESTRIERI.

No. 78801.

District Court, N. D. California, S. D.

Jan. 30, 1945.

Lloyd H. Garner, of San Francisco, Cal., for Department of Immigration and Naturalization.

No appearance for petitioner.

GOODMAN, District Judge.

Calogero Balestrieri, an Italian national, immigrated to the United States in 1903 at the age of thirteen years and has resided in this country continuously thereafter. He is a fish dealer by occupation, is married to an Italian national and has one child born in the United States.

On June 26, 1913, he was convicted in the Superior Court of the State of California, County of Marin, of the crime of murder in the first degree and was sentenced to life imprisonment in the San Quentin State Prison. The record shows that he was a model prisoner and trusty there and was released on parole in June, 1923. On March 15, 1932 he was granted a pardon by the Governor of the State of California. There is no doubt that, except for an arrest in 1938 for fishing without a license, for which petitioner paid a $10 fine, he has behaved in a proper manner in all respects. He has devoted himself to his family, his child being blind since birth, has purchased government bonds, donated his blood to the Blood Bank and is well and favorably regarded by his neighbors and associates.

The naturalization service recommends petitioner for citizenship solely on the ground that petitioner "has behaved as a person of good moral character" for five years prior to the filing of the petition for naturalization. 8 U.S.C.A. § 707(a).

■ However, being of the view that the statute in no way imposes any time li-

mitation upon judicial inquiry as to petitioner's character, the court extended its investigation beyond the five year period and particularly into the facts and circumstances of the 1913 offense.

While the statute imposes upon applicants for citizenship the burden of proving five years good character, it does not restrict or limit in point of time, the power of the court to examine petitioner's qualifications for citizenship. In re McNeil, D. C., 14 F.Supp. 394; In re Ross, 3 Cir., 188 F. 685; In re Caroni, D.C. 13 F.2d 954; In re Laws, D.C. 59 F.Supp. 179.

■ The Court has examined the records pertaining to petitioner's parole and pardon and has also interviewed the trial judge who presided over the trial of the petitioner in 1913. The following excerpt from a letter of the trial judge to the Governor of California in 1929 indicates how the trial judge viewed petitioner's participation in the affray during which the murder was committed:

"I have clearly in mind the facts as they were brought out upon the trial of Balestieri. While there is no doubt in my mind but that the game warden who was killed, was brutally murdered, I was never quite sure how great a part the defendant in the case took in the affray. It clearly appeared from the evidence that the defendant's uncle was the owner of the fishing boat in which the murder took place and that the defendant was on his first fishing trip at the time. The uncle disappeared after the murder and was never found, rumor having it that he went back to Italy.

"The defendant was a mere lad at the time, and, while I had no alternative but to sentence him to life imprisonment, I always took a great interest in him and, during the rest of the time I was on the Bench, I used to look him up whenever I called at San Quentin. He accepted his punishment with good grace and apparently bore no ill will against the prosecution or against me. The prison authorities many times told me that he was a model prisoner. I understand that he was a trusty for some years before he was paroled.

"I recommended his parole some years before it was granted and I feel that his conduct subsequent to his parole, of which I have no personal knowledge, but, which I am assured has been excellent, warrants his application for a Pardon at the present time."

The parole officer's statement as to the nature of the offense is as follows: "The offense was the result of an affray between a group of fishermen and Deputy Fish and Game Wardens, the outgrowth of some illegal fishing with nets in San Francisco Bay, off the Marin shore. Balestieri had been called to one of the boats to act as an interpreter between the fishermen and the officers. A dispute resulted and the fishermen assaulted the game wardens, causing the death of two parties, a deputy game warden and a fisherman. Balestieri was shot in the hand. He maintains he took no part in the assault and another party, one of the real offenders, made good his escape and was never apprehended. The District Attorney, Mr. Thos. P. Boyd, who prosecuted him, states he does not believe he was the aggressor but was implicated in the general row."

The District Attorney, the Parole Officer, the Board of Pardons and the Trial Judge all joined in the application for pardon.

I was first of the view that no person convicted of murder and sentenced to life imprisonment therefor could ever qualify as a person of good moral character justifying the bestowal of the valuable privilege of citizenship.

However, the result of my investigation in this case leads me to believe that petitioner does now deserve citizenship. He was a young lad at the time of the commission of the crime. The real aggressor, petitioner's uncle, escaped. The officers and the trial judge appear to be in doubt as to the extent of his participation in the offense. His conduct in prison and thereafter appears to have been exemplary.

In view of all the facts and circumstances, I have concluded that the petitioner should be admitted to citizenship and it is so ordered.