(No. 31471.—

ANTHONY EDWARD SODO, Appellee, *vs.* UNITED STATES OF AMERICA, Appellant.

*Opinion filed September 21, 1950.*

OTTO KERNER, JR., United States Attorney, JOHN P. LULINSKI, BENJAMIN D. CARUSO, and DEWEY G. HUTCHINSON, all of Chicago, for appellant.

HORATIO TOCCO, of Chicago, for appellee.

Mr. Justice Thompson delivered the opinion of the court:

This is an appeal from an order of the city court of Calumet City, entered March 15, 1949, admitting the appellee, Anthony Edward Sodo, to citizenship in the United States of America, and from an order entered October 18, 1949, denying the motion of the United States for a new hearing of the petition for naturalization of the petitioner on the ground of newly discovered evidence.

The appellee filed his petition for naturalization in the city court of Calumet City, was questioned by a naturalization officer and made an affidavit that he had been arrested only four times in his life. The affidavit was filed with the petition. On January 10, 1947, he made another sworn statement in which he admitted fourteen arrests and stated that during his entire working life in this country, with the exception of two years, he had been engaged in the operation of speakeasies, taverns and similar enterprises. The arrests disclosed in the second affidavit were in response to questions by the examiner and included arrests on assault and battery, bootlegging, operation of a house of ill fame, possession of gambling devices and violation of saloon-closing ordinances of Calumet City. The last arrest occurred in 1942 in Peru, Indiana, in connection with a charge of operating a house of ill fame. This charge was dismissed. These arrests occurred over a period beginning about 1922, and resulted in at least four instances of fines and imprisonment. On the hearing, the Government recommended the petition for naturalization be denied, on the ground that appellee had not established good moral character as required by section 707(a) of the Nationality Act, (U.S.C.A. Title 8, par. 707,) for the reason appellee made a false affidavit regarding his arrests. The court heard testimony of two witnesses, who testified they had known appellee for some twenty years and that his moral character was good. On March 15, 1949, the

court entered an order finding appellee had made the false affidavit of September 14, 1945, as a result of nervousness, excitement and without intent to withhold material information and admitted appellee to citizenship. On March 25, 1949, the Government moved for a new hearing on the ground of newly discovered evidence. On hearing on that motion it appeared that appellee had departed the United States into Mexico, returning on January 21, 1949, without having obtained a border-crossing permit or other authorization from the immigration authorities as required by section 451 of the Aliens Registration Act. (U.S.C.A. Title 8, par. 451.) This motion was heard on a stipulation of facts, and the court, on October 18, 1949, denied the motion and held the trip to Mexico did not affect the legality of appellee's residence in the United States for naturalization purposes. The appeal here is from both orders of the court.

The first question for determination is whether the court properly found appellee to be of good moral character so as to justify his admission to citizenship; the second, whether the court properly denied the motion for a new hearing.

The naturalization of appellee involves the granting to him the right to vote and therefore involves the elective franchise, which justifies direct appeal to this court.

It is the contention of the Government that the appellee has failed to establish good moral character as required by section 707(a) of the Nationality Act. That section, which is pertinent here, provides as follows: "No person, * * * shall be naturalized unless such petitioner, (1) immediately preceding the date of filing petition for naturalization has resided continuously within the United States for at least five years * * *, (2) has resided continuously within the United States from the date of the petition up to the time of admission to citizenship, and (3) during all the

periods referred to in this subsection has been and still is a person of good moral character,   *   *   *."

The Government in support of its position cites the rule that a petitioner for naturalization has the burden of establishing every condition upon which admission to citizenship is dependent.   (*Calo* v. *United States*, 400 Ill. 329; *Tutun* v. *United States*, 270 U. S. 568, 46 S. Ct. 425.) This presents the precise question whether the record in this case supports the finding below that appellee is "a person of good moral character," as required by the Nationality Act above quoted.

An examination of the record reveals the following facts in regard to the moral character of the appellee: With his petition he executed and filed an affidavit in which he stated he had been arrested only four times in his life. In this affidavit he listed these arrests as occurring in 1922 and in 1928 for liquor law violations, once in 1939 for reckless driving and once in 1941 for violation of the saloon-closing ordinance of Calumet City.   Appellee's petition recites that he has previously filed petitions for naturalization, three times in the United States District Court at Hammond, Indiana, in 1925, in the city court of Calumet City, Illinois, in 1938, and again in that court in 1942, all of which were denied for lack of good moral character.

On the hearing, the appellee admitted that he had been arrested a total of fourteen times, over a period extending from 1924 to 1942, on charges which included bootlegging, possession of gambling devices, violation of saloon-closing ordinances, assault and battery and operation of a house of ill fame.

It is the contention of appellee that the arrests and convictions which occurred prior to the five-year period immediately preceding the filing of the petition can have no bearing on the case.   This question was discussed in the *Application of Murra*, 178 Fed. 2d 670.   There is nothing,

however, in the *Murra case* which indicates that inquiry may not be made as to facts occurring prior to the five-year period for the purpose of elucidation of facts which occurred within the period. It would not seem logical to hold that where a petitioner has made an affidavit regarding his criminal record the court may not permit inquiry to determine the truth of that affidavit, even though such inquiry may extend beyond the five-year period in the instant case.

In the case of *United States* v. *Etheridge,* 41 Fed. 2d 762, the petitioner concealed the fact he had entered the United States under another name and had twice been convicted of crimes. In vacating its order admitting him to citizenship, the court said: "It is incumbent upon him, when requested, to honestly and truthfully disclose the facts bearing on his moral character during and before the five-year period, in order that the court may determine whether, taking into account his whole conduct, he has in fact been a man of good moral character during the five-year period." The basis for decision there was not the matters concealed which occurred prior to the five-year period, but the fact of concealment which would occur within this period.

It has been held that filing a false affidavit regarding a petitioner's arrest exhibits a lack of good moral character requiring denial of citizenship. (*Del Guerico* v. *Pupko,* 160 Fed. 2d 799.) In the recent case of *United States* v. *Harrison,* 180 Fed. 2d 981, the petitioner left his wife and children in Ireland in 1937, entered the United States in 1940 and married another woman without securing a divorce. On examination by an officer of the immigration service, he swore falsely that he had not been married before he entered this country. The bigamous marriage was annulled and he recanted his affidavit. The circuit court of appeals held as a matter of law petitioner in that

case was not a person of good moral character and reversed the order admitting him to citizenship.

Section 746 of the Nationality Act, (U.S.C.A. Title 8, par. 746,) which was in effect when the affidavit in the instant case was made, makes it a felony for any alien or other person "(1) Knowingly to make a false statement under oath, either orally or in writing, in any case, proceeding, or matter relating to, or under, or by virtue of any law of the United States relating to naturalization or citizenship."

In the instant case it is undisputed that the affidavit made on September 14, 1945, was false. It also appears by appellee's own testimony that on two prior occasions, in 1938 and 1942, his petitions for naturalization were denied because he had sworn falsely as to the number of his arrests. Under such circumstances the importance of giving a correct statement should have impressed itself upon the appellee. The only attempt to justify appellee's conduct is his argument that most of the arrests were in connection with liquor violations and that such laws "are more honored in their breach than in their observance." A sufficient answer to this would seem to be that whatever the state of observance of the liquor laws, the making of a succession of false affidavits, two within the five-year period preceding the filing of the instant petition, would not disclose good moral character.

In view of our determination, it is unnecessary to discuss the motion of the Government for a new hearing on the ground of newly discovered evidence.

We have examined the record and are of the opinion the appellee has failed to prove, as required, that he is "a person of good moral character," and, having failed to discharge his burden of proof in that respect, the court erred in admitting the appellee to citizenship in the United States of America. The judgment is, therefore, reversed.

*Judgment reversed.*