## RALICH v. UNITED STATES.

No. 14201.

United States Court of Appeals
Eighth Circuit.

Dec. 27, 1950.

E. J. Abdo, Minneapolis, Minn. (Haugland & Abdo, Minneapolis, Minn., on the brief), for appellant.

Howard H. Gelb, Asst. U. S. Atty., St. Paul, Minn. (C. U. Landrum, U. S. Atty., St. Paul, Minn., and Ben C. Marien, Immigration and Naturalization Service, St. Paul, Minn., on the brief), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and THOMAS, Circuit Judges.

GARDNER, Chief Judge.

This appeal is from an order denying appellant's petition for naturalization as a citizen of the United States of America. Appellant was born in Jugoslavia but came to the United States in September, 1901. She filed petition for naturalization July 11, 1941 but it was not heard by the court until November 17, 1947 and March 6, 1950. The court found that appellant was formerly an operator of houses of ill fame in Minneapolis, Minnesota, beginning about the year 1922 and continuing until 1933 or 1934; that during that period she operated so-called hotels in Minneapolis which were in reality houses of prostitution; that she knowingly permitted prostitutes to ply their profession therein under an arrangement whereby she obtained a certain agreed percentage of their earnings; that after hearing testimony of former prostitutes and others acquainted with the nature of her activities she admitted that she operated certain hotels in Minneapolis during this period but denied that she had knowledge of any illegal business being conducted therein; that she received merely the customary room rent from the inmates. The court found as a fact that "she wilfully and knowingly perjured herself when she falsely swore that she never operated these hotels as houses of prostitution." Details of the nauseating testimony upon which the court made these findings and the revolting conduct of the appellant during the period mentioned, as shown by overwhelming testimony, is omitted here be-

cause appellant does not question the sufficiency of the evidence, if admissible, to sustain the court's findings.

Appellant seeks reversal on substantially the following grounds: (1) there being no proof of misbehavior on the part of appellant in the five years immediately preceding the date of the filing of her petition for naturalization, her petition should not be denied upon proof of misdeeds antedating the five-year period; (2) evidence of misdeeds prior to the five-year period may not be received as proof of the alien's present moral standard and character; (3) the alien may not be asked upon a naturalization trial whether she committed misdeeds during a period antedating the five-year period and her testimony that she did not, being on an immaterial issue, can not be the basis of finding her guilty of perjury or false swearing.

■ An alien has no inherent right to naturalization as citizenship is a gift or a privilege which a foreign government may refuse or may grant on such conditions as it may prescribe. Congress has provided the conditions on which a foreigner may become a citizen of the United States of America. Section 707(a), Title 8 U.S.C.A., provides that, "No person, except as hereinafter provided in this chapter, shall be naturalized unless such petitioner, (1) immediately preceding the date of filing petition for naturalization has resided continuously within the United States for at least five years and within the State in which the petitioner resided at the time of filing the petition for at least six months, (2) has resided continuously within the United States from the date of the petition up to the time of admission to citizenship, and (3) during all the periods referred to in this subsection has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States."

■ It is observed that this statute provides in effect that one seeking naturalization must prove, among other things, that for at least five years petitioner has been and still is a person of good moral character.

Over appellant's objection the government was permitted to show acts involving immoral conduct for a period antedating the five-year period. It is first worthy of note that the statute does not prescribe as a condition for naturalization that the applicant be a person of good repute during the five-year period, but that during that period he shall be a person of good moral character. Character implies moral qualities which belong to and distinguish an individual person. It signifies the reality as distinguished from reputation or the opinion generally entertained of him. Sloan v. United States, 8 Cir., 31 F.2d 902; In re Weinstein, 150 Or. 1, 42 P.2d 744; H. L. Shaffer & Co. v. Prosser, 99 Colo. 335, 62 P.2d 1161; Thompson v. State, 115 Tex. Cr.R. 530, 28 S.W.2d 153; State v. Hartung, 239 Iowa 414, 30 N.W.2d 491. In Sloan v. United States, supra, Judge Stone, speaking for this court, said: "Character is what a man really is. Reputation is what the general run of people who know him think he is." [8 Cir., 31 F.2d 906.]

In Re Weinstein, supra, the Supreme Court of Oregon considered the fitness of an applicant to practice law. By rule of court which had the force and effect of law it was provided that to be admitted to practice law the applicant must produce proof that he is "a person of good moral character". In referring to the meaning to be given to the words "good moral character" the court among other things said: " * * * Character and reputation are distinct. Reputation is the opinion generally entertained of a man, while character is what he really is." [150 Or. 1, 42 P.2d 745.]

In that case the application was denied although the petitioner produced witnesses who testified to his general good reputation.

■■ The distinction between what one really is and what he may appear to be has long been recognized. The words " * * * ye also outwardly appear righteous unto men, but within ye are full of hypocrisy and iniquity," were spoken of those who may well have borne good reputations but who were in fact not of good moral character. As the term "character" refers to qualities of the individual, any evidence,

circumstantial or otherwise, bearing upon that question should be pertinent. In other words, the evidence of a life of immorality experienced by the appellant during many years of depravity might, we think, properly be considered in determining whether or not during the five years immediately preceding the filing of her application she was a person of good moral character. There is a conflict among the authorities on the question and the courts seem to be about evenly divided. Thus, in Application of Murra, 7 Cir., 178 F.2d 670, 673, the court held that, " * * * the government in its inquiry as to the fitness of an applicant for naturalization is confined to the five year period immediately preceding the filing of the petition for naturalization * * *."

On the other hand, in Molsen v. Young, 5 Cir., 182 F.2d 480, 483, it is said: "We find no merit in the contention that the trial court, in its inquiry concerning the petitioner's alleged attachment to the principles of the Constitution and good moral character, was limited to the statutory period of five years prior to the filing of the petition for naturalization. The statute does not require that the evidence necessary to meet the tests of loyalty and good character be confined to the five year period. It merely disqualifies for citizenship those who cannot show the requisite loyalty and good moral character for at least five years prior to their application, and thereby fixes the minimum requirement as to these statutory qualifications which petitioners for citizenship must meet."

In Yuen Jung v. Barber, 9 Cir., 184 F.2d 491, 495, the court considered the application for naturalization of a person who had served honorably in the United States Army for a period of three years. While the court held that the statute fixed the service in the army for the period prescribed as fulfilling requirements in that regard, the decision considers the conflict in authorities as to the requirement under Section 707(a). In the course of that well-considered opinion the court among other things said:

"This does not mean that the court may not inquire into the petitioner's character in prior periods. For such evidence is circumstantially relevant as bearing upon petitioner's character during the five year period, or in a case like this, during the period of military service. But the ultimate fact to be determined, and the only material one, is his moral character within the specified period. * * *

"The evidence of applicant's past misconduct was relevant and properly considered for the purpose of determining whether in fact petitioner was a person of good moral character at the time of the filing of his petition."

In Sodo v. United States, 406 Ill. 484, 94 N.E.2d 325, 327, the Supreme Court of Illinois in referring to the decision of the Seventh Circuit in Application of Murra, supra, said: "There is nothing, however, in the Murra case which indicates that inquiry may not be made as to facts occurring prior to the five-year period for the purpose of elucidation of facts which occurred within the period."

In the instant case the question for determination was whether or not during the five-year period immediately preceding the filing of her petition appellant was a person of good moral character. The evidence referring to the acts of conduct and way of life of petitioner during the period including the five-year period was, we think, pertinent and material to the issue. There was no evidence of any penitence or moral reformation of character; in fact, as pointed out by the trial court, she denied the charges of immorality. The court said:

"The testimony of two character witnesses who express the opinion in a perfunctory manner that a petitioner was a person of good moral character during the five-year period may prove to be evidence of very slight value in determining whether a petitioner is a person of the moral fitness which the statute contemplates.

"A former operator of houses of ill fame who is contrite and penitent may have redeemed herself by good deeds and good conduct during the five-year period so that citizenship should not be denied her. But when a person who had been engaged in such activities and apparently was able to retire because of her illegal earnings during

that period, wilfuly denies her past by perjured testimony, her true moral worth and fitness is strikingly portrayed."

█ It is to be observed that this statute is not limited to the five-year period but it is incumbent upon the applicant to show that "he still is a person of good moral character." The court found that appellant falsely testified in her denials of acts of immorality. Perjury is a criminal offense and that in itself was sufficient ground for denying her application for citizenship. In United States v. Harrison, 9 Cir., 180 F.2d 981, 983, the court among other things said: "Congress set the standard of character in cases of this kind and it certainly did not intend to suggest to courts that they regard the commission of the crimes of perjury and bigamy by alien applicants for citizenship as evidence of their good moral character.".

█ We are of the view that the court committed no error in denying appellant's petition for naturalization, and the order appealed from is affirmed.