**Petition for Naturalization of Patsy FERRO.**

No. 2846-P-4438.

United States District Court
M. D. Pennsylvania.
May 10, 1956.

Herbert M. Levy, Philadelphia, Pa., for Department of Immigration and Naturalization.

Patsy Ferro, pro se.

**JOHN W. MURPHY, Chief Judge.**

Patsy Ferro seeks naturalization under § 311 of the Nationality Act of 1940, 54 Stat. 1145, 8 U.S.C.A. § 711 (1940 ed.), now 8 U.S.C.A. § 1430(a).[1] As Patsy Fierra he was on August 27, 1924, while a fugitive from justice, indicted in a Pennsylvania state court for murder. Later apprehended he was on September 13, 1928, found guilty of murder in the second degree and sentenced to "separate and solitary confinement at labor" for not less than ten nor more than twenty years. He was paroled after seven years and finally discharged from parole on September 18, 1948, less than five years prior to filing his petition for naturalization on October 10, 1952.

For reasons hereinafter stated, if the provisions of the Immigration and Nationality Act of 1952, enacted June 27, 1952, but not effective until December 24, 1952,[2] were applicable[3] the petition would have to be denied forthwith. However, § 405(b) thereof requires that this petition be heard and determined under the 1940 Act.[4]

1. Age fifty-three, a native and national of Italy, lawfully admitted for permanent residence May 3, 1912, a resident of Pennsylvania thereafter. Because of his marriage in 1939 to a native-born American citizen, the residence requirement of five years was reduced to two years. See § 311(b), 307(a), 54 Stat. 1142, 8 U.S.C.A. § 707(a) (e) (1940 ed.), now 8 U.S.C.A. § 1427(a) ; one child was born in 1939.

2. See § 407, 8 U.S.C.A. § 1101, Historical Note; Comment, subd. V, 8 U.S.C.A. p. 18.

3. See § 316(a), subsection (e), 64 Stat. 998, 8 U.S.C.A. § 1427(e), and see Commentary, 8 U.S.C.A. p. 1 at p. 79; § 101 (f), 8 U.S.C.A. § 1101(f).

4. 8 U.S.C.A. § 1101, Historical Note (b), " * * * any petition * * * pending at the time this Act shall take effect shall be heard and determined in accordance with the requirements of law in effect when such petition was filed"; and see Id. as to § 405(a).

The examiner finds that the petitioner was a model parolee and thereafter led an exemplary life. · Resting upon the premise that the law requires no more than a showing of good moral·character for two years immediately preceding the filing of the petition and that Congress "undoubtedly intended to provide for the reformation of those who have been guilty of past misdeeds" recommends that the petition be granted. We do not agree.

While § 311(b) reduced the residence requirement it did not lessen the burden on the petitioner of showing good moral character "for at least five years".[5] A number of cases have held that good moral character can be established only where the applicant is a free moral agent having the same liberties and limitations as are common to other residents; not while he is on parole or in prison.[6] Im-

plicit in the examiner's position is that the court is bound to follow that line of cases which hold that in determining whether or not good moral character has been established the court is restricted in its examination to the petitioner's conduct during the five years prior to filing of the petition. The leading case for this view is Petition of Zele, 2 Cir., 1944, 140 F.2d 773, at page 776, "Under the law the burden is on the petitioner to establish good moral character only during the five year period, not earlier. * * * And it has consistently been construed liberally so as to sanction forgiveness after the expiration of five years from the date of the disbarring misdeed." And see Id., 127 F.2d 578, at page 580, "Good behavior during the five year period is the only test of moral fitness provided in the statute", [7,8] followed in Petition of Sperduti, D.C.M.D.Pa.1949, 81

5. In re Laws, D.C.N.D.Cal.1944, 59 F. Supp. 179; In re Falck, D.C.D.C.1938, 24 F.Supp. 672; In re Taran, D.C.Minn. 1943, 52 F.Supp. 535, at page 539, and see In re Bookschnis, D.C.Or.1945, 61 F. Supp. 751, 752, and note 22 A.L.R.2d 244, 245; but cf. Yuen Jung v. Barber, 9 Cir., 1950, 184 F.2d 491, as to members of the armed forces.

6. See note 22 A.L.R.2d 244 at 255; In re Trum, D.C.W.D.Mo.W.D.1912, 199 F. 361; In re McNeil, D.C.N.D.Cal.1936, 14 F.Supp. 394; In re Laws, supra, 59 F.Supp. 179; contra, Petition of Sperduti, D.C.M.D.Pa.1949, 81 F.Supp. 833, Watson, C. J.; Daddona v. United States, 2 Cir., 1948, 170 F.2d 964, even where confined in prison during a large part of the five-year period; the latter two cases agree that moral character is a question of fact.

7. For the history of the rule in the Second Circuit, see United States v. Clifford, 2 Cir., 1937, 89 F.2d 184, at page 185, rule assumed; Petition of Schlau, D.C. S.D.N.Y.1941, 41 F.Supp. 161 (perhaps because the conduct in question was not sufficient to negative good moral character), relying upon United States v. Rubia, 5 Cir., 1940, 110 F.2d 92, but cf. Molsen v. Young, 5 Cir., 1950, infra, 182 F.2d 480, the same circuit, contra; Petition of Zele, 127 F.2d 578, at page 580, cites Clifford, Rubia and Schlau; United States v. Francioso, 2 Cir., 1947,

164 F.2d 163, rule applied, petitioner married a niece and had a family, held not to prevent awarding of citizenship; Repouille v. United States, 2 Cir., 1947, 165 F.2d 152, during five-year period, petitioner to prevent further suffering put to death his thirteen year old son by means of chloroform; the court suggests if he had done the act before the five-year period he would have been admitted without question; Daddona v. United States, 2 Cir., 1948, 170 F.2d 964, manslaughter, petition allowed although a large part of the five-year period was spent in prison; and see and cf. In re Aldecoa, D.C.Idaho S.D.1938, 22 F.Supp. 659, 661, also cited.

8. As to liberality, the court in 140 F.2d at page 776 cites: In re Trum, D.C.W.D. Mo.1912, 199 F. 361, liquor violation; In re Centi, D.C.W.D.Tenn.1914, 217 F. 833, voted although non-citizen; In re Guliano, D.C.S.D.N.Y.1907, 156 F. 420; United States v. Mirsky, D.C.S.D.N.Y. 1926, 17 F.2d 275; In re Nagy, D.C.S.D. Tex.1924, 3 F.2d 77, liquor violations; Application of Polivka, D.C.W.D.Pa. 1939, 30 F.Supp. 67, spouse divorced petitioner for cruel and barbarous treatment; in each case the petition was denied; must wait five years to be eligible; In re Schlau, 2 Cir., 1943, 136 F.2d 480, petitioner living with second "wife" thought previous rabbinical divorce sufficient; question of intent; and see In re Paoli, D.C.N.D.Cal.S.D.1943, 49 F.Supp. 128, also cited.

F.Supp. 833, Watson, C. J. (murder first degree).[9] Application of Murra, 7 Cir., 1950, 178 F.2d 670, at page 672, suggests that any other view would be "contrary to the overwhelming weight of authority", but see Ralich v. United States, 8 Cir., 1950, 185 F.2d 784, at page 787, " * * * the courts seem to be about evenly divided."

In our judgment the weight of authority, reason and principle is in favor of a broader scope of review. " * * * while the statute imposes upon applicants for citizenship the burden of proving five years good character, it does not restrict or limit in point of time, the power of the court to examine petitioner's qualifications for citizenship." In re Balestrieri, D.C., 59 F.Supp. 181, at 182. See, e. g., Molsen v. Young, 5 Cir., 1950, 182 F.2d 480; Ralich v. United States, 8 Cir., 1950, 185 F.2d 784, at page 787; Marcantonio v. United States, 4 Cir., 1950, 185 F.2d 934; Yuen Jung v. Barber, 9 Cir., 1950, 184 F.2d 491, at page 495; In re Ross, C.C.M.D.Pa.1911, 188 F. 685, Witmer, J. (murder second degree) took this position; and see In re Markiewicz, D.C.W.D.Pa.1950, 90 F.Supp. 191, 194.[10] As to Application of Murra, see Ralich v. United States, supra, 185 F.2d at page 787, "In Sodo v. United States, 406 Ill. 484, 94 N.E.2d 325, 327, the Supreme Court of Illinois in referring to * * * Application of Murra * * * said: 'There is nothing * * * in the Murra case which indicates that inquiry may not be made as to facts occurring prior to the five-year period for the purpose of elucidation of facts which occurred

within the period.'" See and cf. Stevens v. United States, 7 Cir., 1951, 190 F.2d 880, at page 881.

Sometimes hard cases make bad law. A precedent may become hardened into a principle. An examination of the earlier cases, see notes 7 and 8 supra, suggests that the conduct in question was perhaps not sufficient to prevent the granting of citizenship. Instead of treating the problem as one of insufficiency of evidence to establish or prevent establishment of a fact the court placed its decision in effect on the theory of excluding evidence but, by way of statutory interpretation, treating the five-year period as one of limitation of the scope of review. See e. g., Application of Murra, supra, 178 F.2d at page 673, "The wording of the statute itself leaves little room for doubt. If a five year period is a 'minimum requirement' * * * it become meaningless. If the time fixed by Congress is 'minimum,' then it would seem to follow that the maximum time would be during all of the petitioner's life." [11] A short answer is that the scope of review is a question of evidence limited by the exercise of judicial discretion. See Molsen v. Young, supra, 182 F.2d at page 483, "The statute does not require that the evidence * * *, be confined to the five year period. It merely disqualifies for citizenship those who cannot show the requisite * * * good moral character for at least five years prior to their application, and thereby fixes the minimum requirement as to these statutory qualifications which petitioners for citizenship must meet."

9. Citizenship awarded although petitioner was on parole during part of the five year period.

10. In re Balestrieri, D.C.N.D.Cal.S.D.1945, 59 F.Supp. 181, at page 182 (murder first degree); In re McNeil, supra (embezzlement); In re Laws, supra; In re Caroni, D.C.N.D.Cal.S.D.1926, 13 F.2d 954 (manslaughter); Petition of Gabin, D.C.N.D. Cal.S.D.1945, 60 F.Supp. 750, 751 (engaging in narcotic traffic); In re Spenser, C.C.D.Or.1878, 22 Fed.Cas. page 921, No. 13,234; United States v. Etheridge, D.C. Or.1930, 41 F.2d 762, 763, 764; Petition

of John Cristo, Petition No. 733–P–3489, D.C.Ill.1938 (murder first degree) unreported; In re Lipsitz, D.C.D.Md.1948, 79 F.Supp. 954, 956; In re Taran, supra; United States v. Kichin, D.C.E.D.Mo. 1921, 276 F. 818, at page 822.

11. Id. "We need not decide that a court is never justified in making inquiry concerning a petitioner previous to the five year period, but what we do think and hold is that even so the facts developed by such an inquiry cannot be used as the basis for disqualification." Id., 178 F.2d at page 673.

United States **v.** Etheridge, supra, 41 F.2d at page 764, "The statute does not prescribe the evidence which shall be satisfactory to the court, nor that it be confined to the five-year period." To place the discussion of this point in its proper setting, let us first review some general principles.

■ Naturalization is a matter of grace, not of right. Congress may grant or withhold the privilege upon any grounds or without any reason as it sees fit. Terrace v. Thompson, 1923, 263 U.S. 197, at page 220, 44 S.Ct. 15, 68 L.Ed. 255, and see United States Constitution, Art. I, § 8, Cl. 4. They may establish conditions prerequisite to the grant thereof and procedure for determining whether or not such conditions have been met. No alien has any right to naturalization unless all statutory requirements are complied with. Tutun v. United States, 1926, 270 U.S. 568, 578, 46 S.Ct. 525, 70 L.Ed. 738, " * * * in order to safeguard against admission of those who are unworthy, or who for any reason fail to measure up to required standards, the law puts the burden upon every applicant to show by satisfactory evidence that he has the specified qualifications." United States v. Schwimmer, 1929, 279 U.S. 644, at page 649, 49 S.Ct. 448, at page 449, 73 L.Ed. 889.[12]

■■ Once such rules are prescribed courts are without authority to sanction changes or modifications therein. " * * * their duty is rigidly to enforce the legislative will * * *." United States v. Ginsberg, 243 U.S. 472, at page 474, 37 S.Ct. 422, at page 425, 61 L.Ed. 853. "* * * Because of the great value of the privileges conferred * * * the statutes * * * are to be construed with definite purpose to favor and support the government." United States v. Schwimmer, 279 U.S. at page 649, 49 S.Ct. at page 449, supra, "Doubts * * should be resolved * * * against the claimant." United States v. Manzi, 1928, 276 U.S. 463, 467, 48 S.Ct. 328, 329, 72 L.Ed. 654.

■ Congress has declared that before one is entitled to the privilege of citizenship he must by competent evidence make it appear to the court that he has behaved as a man of good moral character. Good moral character is a fact to be determined.[13] See Spratt v. Spratt, 1830, 4 Pet. 393, at page 408, 29 U.S. 393, at page 408, 7 L.Ed. 897; United States v. Macintosh, 1931, 283 U.S. 605, at pages 616, 617, 51 S.Ct. 570, 75 L.Ed. 1302.[14] A personal attribute to be inferred from all relevant facts and circumstances which tend to reveal petitioner's attitude in that regard. See dissenting opinion, Stone, C. J., Schneiderman v. United States, 320 U.S. 118, at page 182, 63 S.Ct. 1333, 87 L.Ed. 1796; and see and cf. Mr. Justice Murphy speaking for the majority at page 139 of 320 U.S., at page 1343 of 63 S.Ct. By the very generality of the term used it is evident that Congress intended an elastic test, one which should not be circumscribed by attempts at precise definition.

See 3 Wigmore on Evidence, 3d Ed. § 920, " * * * there may be particular instances of conduct * * * from which is inferable the permanent disposition that has inspired them * * *." [15]

12. Overruled on other grounds. Girouard v. United States, 1946, 328 U.S. 61, at page 69, 66 S.Ct. 826, 90 L.Ed. 1084.

13. As to the competency or weight of the evidence, see United States v. Ness, 1917, 245 U.S. 319, at page 325, 38 S. Ct. 118, 62 L.Ed. 321.

14. Id. Note 12 supra.

15. (Footnote inserted). Murder committed prior to the five-year period, In re Ross, supra, held that per se barred him from citizenship; In re Caroni, supra, manslaughter, "The moral turpitude involved in any unlawful killing of a human being refutes all evidence of that good character which is a condition precedent to admission to * * * citizenship. The offense is more indicative of the applicant's true character than any amount of precautionary and decorous conduct following hard on the heels of parole."

See In re Taran, D.C.D.Minn.1943, 52 F.Supp. 535, at page 537, and In re Markiewicz, supra, multiple crimes; United

See Id. § 928, suggesting three approaches which have been taken to this problem:

(1) "On principle, the correct solution seems to be that prior character at any time may be admitted, as being relevant to show present character * * *." [16]

(2) "Another solution is that prior character should not be resorted to unless for some reason present character cannot be truly shown * * *."

(3) "A third solution altogether excludes prior character.[17] This is wholly incorrect on principle, because it is founded on a fallacious analysis of the problem. It is objectionable in policy, because it excludes a class of evidence often meritorious in itself and sometimes the sole kind that is available." And see Id. §§ 977, 978.[18]

In our judgment, the proper approach is that of Chief Judge Parker in Marcantonio v. United States, supra, 185 F.2d at page 936, "* * * evidence of offenses committed prior to the five year period * * * could be received and considered with other evidence as a basis for finding that the petitioner had not shown good character within the five year period and at the time of the application * * *." And see Yuen Jung v. Barber, supra, 184 F.2d at page 495, "* * * character in prior periods. * * * is circumstantially relevant as bearing upon petitioner's character during the five year period * * *. But the ultimate fact to be determined * * * is his moral character within the specified period. * * *"

Marcantonio v. United States, supra, 185 F.2d at page 937, "* * * the judge may consider any proper evidence having reasonable tendency to prove or disprove * * * character * * * the fact of petitioner's having committed serious crimes at any time during his life has a bearing on his character * * *"[19]

---

States v. Kichin, supra, 276 F. at page 822, "* * * broken every commandment in the decalogue, and * * * committed every crime in the criminal calendar * * * had seen fit to temporarily reform for five years." Petition of Gabin, supra, and see 22 A.L.R.2d at 253.

In re Balestrieri, supra, (conviction murder) applied the doctrine but awarded citizenship.

16. See Note 15 supra.

17. (Footnote inserted). Cf. cases Note 7 supra.

18. See Id. § 60, "Character at an earlier time * * * is relevant only on the assumption that it was substantially unchanged in the meantime * * *." As cited in 3 Wigmore, 3d Ed. p. 471 et seq.; see Teese v. Huntingdon, 1859, 23 How. 2, 14, 16 L.Ed. 479, if not too remote; Minkow v. United States, 4 Cir., 1925, 5 F.2d 319; People v. Abbot, N.Y.1838, 19 Wend. 192, 200, "A long established character * * * is always more striking and more to be relied on than that of a day, a month, or a year." Sleeper v. Van Middlesworth, N.Y.1847, 4 Denio 431, "It might be too much to say that a character, when once formed, is presumed to remain unchanged for life. Still, the law founded on a full knowledge and just appreciation of the general course of human affairs, indulges a strong presumption against any sudden change in the moral * * * condition of man * * *. No certain limit, in point of duration, can be laid down for inquiries like this." Willard v. Goodenough, 1858, 30 Vt. 393, 397, "What the characters had formerly been is relevant only as it blends with the continuous web of life and tinges its present texture."

Accord: See Morss v. Palmer, 1850, 15 Pa. 51, 56, "It is impossible to fix any precise bound, as each case must depend on its own peculiar circumstances." Cf. Smith v. Hine, 1897, 179 Pa. 203, at page 206, 36 A. 222; Miller v. Miller, 1898, 187 Pa. 572, 590, 41 A. 277.

19. Persons who have been convicted of, or admit having committed a felony or other crime or misdemeanor involving moral turpitude are excluded from the United States. 2 Am.Jur. Aliens, § 83; United States ex rel. Ulrich v. Kellogg, 1929, 58 App.D.C. 360, 30 F.2d 984, 986, 71 A. L.R. 1210.

See Act of 1952, § 212(a) (9), 8 U.S. C.A. § 1182(a) (9), and see Act of 1954 as to certain misdemeanors, 8 U.S.C.A. § 1182(a).

■ The test is whether in law and in fact the petition should be granted, the privilege postponed or barred forever. Each case stands upon its own facts.

Yuen Jung v. Barber, supra, 184 F.2d at page 495, suggests that finding prior conduct per se sufficient to preclude citizenship requires a holding " * * * that Congress had enacted a legislative doctrine of predestination and eternal damnation"; that "All modern legislation dealing with crime and punishment proceeds upon the theory that *aside from capital cases,* no man is beyond redemption. We think a like principle underlies these provisions for naturalization." (Italics supplied.) But see In re Ross, supra, 188 F. at page 686, " * * * if his personal welfare alone was entitled to consideration the conferring * * * rights of citizenship might be considered as proper aid and encouragement. This matter, * * * is not to be determined along such narrow lines. * * * " In re Caroni, supra, 13 F.2d at page 955, " * * * Undoubtedly the interest of society requires the rehabilitation of the criminal * * * but this does not import * * * (bestowal) * * * of * * * citizenship." The liberality shown in the cases in Note 8 supra was as to the offense or conduct which would not preclude awarding citizenship and in allowing reapplication albeit not until five years later.

The view we take more nearly comports with and effectuates the purpose of the naturalization statutes. The contrary view is at variance with the purpose of the statute, nullifies to a certain extent at least, the rule that any doubt must be resolved against the petitioner. See 22 A.L.R.2d at 247; and see Petition of Reginelli, 20 N.J. 266, 119 A.2d 454, at page 456, "We prefer to embrace these latter adjudications as establishing a rule more workable and practical, conducive of sounder and more realistic justice, particularly where, as here, the past may by logical inference illuminate some presently occurring development."

■ The question is what did Congress intend. In our view the best expression of that intention is indicated by the holding of Marcantonio v. United States, supra. We find additional support for this view in § 316(a) (e) of the 1952 Act, 8 U.S.C.A. § 1427(a, e), "In determining whether the petitioner has sustained the burden of establishing good moral character and the other qualifications for citizenship specified in subsection (a) of this section, the court shall not be limited to the petitioner's conduct during the five years preceding the filing of the petition, but may take into consideration as a basis for such determination the petitioner's conduct and acts at any time prior to that period." See Commentary, 8 U.S.C.A. p. 79.

And see Id. § 101(f), 8 U.S.C.A. § 1101 (f),

"For the purposes of this chapter—

"No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was—* * *

"(8) one who at any time has been convicted of the crime of murder * * * " See Legislative History 1952, United States Code, Congressional and Administrative News, Volume 2, p. 1739. Also see In re De Angelis, D.C.E.D.N.Y.1956, 139 F.Supp. 779.

■ Certainly in the 1952 Act Congress expressed its intention, i. e., that a man who committed murder should not become a citizen of the United States. With the light suggested by that unequivocal declaration of congressional intent and by the teachings of the Supreme Court, we hold that in view of the petitioner's conviction of murder and incidentally the fact that he was on parole during a part of the five-year period, the petitioner has not shown good moral character during the prescribed statutory period. The petition will therefore be denied.