**Matter of the Petition for Naturalization of Vincent SIACCO.**

**No. 40526.**

United States District Court
D. Maryland.

June 28, 1960.

Thomas J. Kenney, Baltimore, Md., for petitioner.

Ernest H. Hupp, Baltimore, Md., for I. N. S.

THOMSEN, Chief Judge.

The principal question on this petition for naturalization under sec. 316(a) of the Immigration and Nationality Act, 8 U.S.C.A. § 1427, is whether petitioner meets the applicable requirement with respect to good moral character. A subsidiary question is whether the fact that he was convicted of the crime of mur-

der in 1930 and has since been pardoned is an absolute bar to naturalization in view of 8 U.S.C.A. § 1101(f) (8).

Sec. 316(a) of the I.N.A., 8 U.S.C.A. § 1427(a), provides:

"No person, except as otherwise provided in this subchapter, shall be naturalized unless such petitioner, (1) immediately preceding the date of filing his petition for naturalization has resided continuously, after being lawfully admitted for permanent residence, within the United States for at least five years and during the five years immediately preceding the date of filing his petition has been physically present therein for periods totaling at least half of that time, and who has resided within the State in which the petitioner filed the petition for at least six months, (2) has resided continuously within the United States from the date of the petition up to the time of admission to citizenship, and (3) during all the period referred to in this subsection has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States."

Sec. 101(f), 8 U.S.C.A. § 1101(f), provides:

'(f) For the purposes of this chapter—

"No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was—

"(1) a habitual drunkard;

"(2) one who during such period has committed adultery;

"(3) a member of one or more of the classes of persons, whether excludable or not, described in paragraphs (11), (12), and (31) of section 1182(a) of this title; or paragraphs (9), (10), and (23) of section 1182(a) of this title, if the of-

fense described therein, for which such person was convicted or of which he admits the commission, was committed during such period;

"(4) one whose income is derived principally from illegal gambling activities;

"(5) one who has been convicted of two or more gambling offenses committed during such period;

"(6) one who has given false testimony for the purpose of obtaining any benefits under this chapter;

"(7) one who during such period has been confined, as a result of conviction, to a penal institution for an aggregate period of one hundred and eighty days or more, regardless of whether the offense, or offenses, for which he has been confined were committed within or without such period;

"(8) one who at any time has been convicted of the crime of murder.

"The fact that any person is not within any of the foregoing classes shall not preclude a finding that for other reasons such person is or was not of good moral character."

It will be noted that the language of 1101(f) (8) is different from the language of the other subparagraphs of 1101(f) in the use of the words "at any time" rather than the words "during such period".

8 U.S.C.A. § 1251(b), dealing with deportation rather than naturalization, provides: "The provisions of subsection (a) (4) of this section respecting the deportation of an alien convicted of a crime or crimes shall not apply (1) in the case of any alien who has subsequent to such conviction been granted a full and unconditional pardon by the President of the United States or by the Governor of any of the several States, * * *." There is no similar provision in that portion of the Code which deals with naturalization. Thus, two questions of law are presented: (1) whether the fact that a person has been convicted of the crime

of murder is a perpetual bar to naturalization, and (2) what is the effect of an executive pardon for purposes of naturalization. Finally, if petitioner is not absolutely barred, there remains the question (3) whether he has shown that he is a person of good moral character.

■ (1) An applicant for naturalization under sec. 1427(a) is required to show good moral character only during the five year period immediately preceding the filing of his petition. Aside from the special provisions of sec. 1101(f), quoted above, misconduct beyond the five year period is not a bar if the applicant has in fact reformed, but evidence of offenses committed prior to the five year period should be received and considered with other evidence in determining whether petitioner has shown good moral character within the statutory period and at the time of application. Good moral character is not a momentary attribute. Marcantonio v. United States, 4 Cir., 185 F.2d 934, 937; Petition of B, D.C.D.Md., 156 F.Supp. 761; Petition of K, D.C.D. Md., 174 F.Supp. 343. For a general discussion of the law, see Petition of Ferro, D.C.M.D.Pa., 141 F.Supp. 404.

■ Under 8 U.S.C.A. § 1101(f) (8), a person who has been convicted of the crime of murder is treated as a special case. The effect of the first sentence of sec. 1101(f) and of subparagraph (8), read together, is that no person can be found to be a person of good moral character who at any time has been convicted of the crime of murder. The language of Congress appears to be clear that such a conviction is a perpetual bar. Petition of De Angelis, D.C.E.D.N.Y., 139 F. Supp. 779; Petition of Ferro, supra.

(2) In the instant case, however, petitioner, who had been convicted of second-degree murder in two separate cases in a Maryland state court in 1930, received an executive pardon for one offense in May, 1958, and a corrected pardon covering both cases in January, 1960.

The effect of an executive pardon has been variously stated by the courts in cases involving various problems. The language of Ex parte Garland, 4 Wall. 333, 380, 18 L.Ed. 366, is no longer regarded as controlling. Burdick v. United States, 236 U.S. 79, 90, 35 S.Ct. 267, 59 L.Ed. 476; Groseclose v. Plummer, 9 Cir., 106 F.2d 311; United States ex rel. Forino v. Garfinkel, 3 Cir., 166 F.2d 887; People ex rel. Prisament v. Brophy, 287 N.Y. 132, 38 N.E.2d 468, 139 A.L.R. 667; Taran v. United States, 8 Cir., 266 F.2d 561, 567, and Petition of De Angelis, D.C.E.D.N.Y., 139 F.Supp. 779, where the court was dealing with the same subsection we are dealing with here, 8 U.S. C.A. § 1101(f) (8). See also United States v. Wilson, 7 Pet. 150, 8 L.Ed. 640; Murray v. Swenson, 196 Md. 222, 76 A.2d 150.

■ In view of the specific language of sec. 1101(f) (8) and the fact that Congress did not include in the sections dealing with naturalization any provision similar to that contained in sec. 1251(b), the deportation section, with respect to the effect of a pardon, I conclude that Congress intended that a conviction of the crime of murder should be an absolute and perpetual bar to naturalization, despite a pardon, unless the pardon is based upon a finding that the defendant was improperly convicted at his original trial. There was no such finding in this case; the pardon was simply an act of grace. Petition of De Angelis, supra.

■■ (3) Apart from the provisions of sec. 1101(f) (8), it is very doubtful whether petitioner has met the burden resting on him of showing that he is a person of good moral character. The conviction and the subsequent pardon are both facts which may be taken into consideration in determining whether the petitioner has shown himself to be a person of good moral character during the requisite period. Taran v. United States, supra. The evidence shows that before his murder convictions, petitioner had been charged with abduction and rape and had plead guilty to third-degree assault in 1917. He had been convicted of aggravated assault and battery in 1925 and had served nine months. He was pardoned for that offense in 1953 by

the Governor of New Jersey during deportation proceedings based upon the assault and battery charge. Until 1955 he was engaged in the jukebox and cigarette vending machine business. He sold out in 1955, and has done little work since. He says he has lived principally on his wife's earnings. In 1957–58, he worked for a short time as manager and bartender at two bars. Recently, he has been employed as assistant manager of the Gayety Bar on Baltimore's celebrated "Block".

The petition for naturalization is denied.