**Petition for NATURALIZATION of K.**
**No. 40503.**

United States District Court
D. Maryland.
June 12, 1959.

Henry W. Stichel, Jr., Baltimore, Md., for petitioner.

Ernest H. Hupp, Baltimore, Md., for Immigration and Naturalization Service.

THOMSEN, Chief Judge.

The principal question on this petition for naturalization under sec. 319(b) of the Immigration and Nationality Act, 8 U.S.C.A. § 1430(b), is whether petitioner meets the applicable requirement with respect to good moral character.

### The Law to be Applied

Sec. 316(a) of the I.N.A., 8 U.S.C.A. § 1427(a) provides:

"No person, except as otherwise provided in this subchapter, shall be naturalized unless such petitioner, (1) immediately preceding the date of filing his petition for naturalization has resided continuously, after being lawfully admitted for permanent residence, within the United States for at least five years and during the five years immediately preceding the date of filing his petition has been physically present therein for periods totaling at least half of that time, and who has resided within the State in which the petitioner filed the petition for at least six months, (2) has resided continuously within the United States from the date of the petition up to the time of admission to citizenship, and (3) during all the period referred to in this subsection has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States."

Sec. 101(f), 8 U.S.C.A. § 1101(f), provides:

"For the purposes of this chapter—

"No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was—

\* \* \* \* \* \*

"(2) one who during such period has committed adultery;

\* \* \* \* \* \*

"(6) one who has given false testimony for the purpose of obtaining any benefits under this chapter;

\* \* \* \* \* \*

"The fact that any person is not within any of the foregoing classes shall not preclude a finding that for other reasons such person is or was not of good moral character. \* \* \* "

In the ordinary case, therefore, if a petitioner has committed adultery within five years before filing his petition, his petition must be denied. It must also be denied if during that period he has given false testimony for the purpose of obtaining any benefits under Chapter 12, Immigration and Nationality, of Title 8 U.S.C., Aliens and Nationality. In view of the difference in wording between the various numbered paragraphs of sec. 101(f), it may be that such false testimony, whenever given, would be an absolute bar. But it will not be necessary to decide that question in this case.

Sec. 319(b), 8 U.S.C.A. § 1430(b), under which the pending petition was filed, provides:

"Any person, (1) whose spouse is (A) a citizen of the United States, (B) in the employment of the Government of the United States, or of an American institution of research recognized as such by the Attorney General, or of an American firm or corporation engaged in whole or in

part in the development of foreign trade and commerce of the United States, or a subsidiary thereof, or of a public international organization in which the United States participates by treaty or statute, and (C) regularly stationed abroad in such employment, and (2) who is in the United States at the time of naturalization, and (3) who declares before the naturalization court in good faith an intention to take up residence within the United States immediately upon the termination of such employment abroad of the citizen spouse, may be naturalized upon compliance with all the requirements of the naturalization laws, except that no prior residence or specified period of physical presence within the United States or within the jurisdiction of the naturalization court or proof thereof shall be required."

It is clear that sec. 319(b) has eliminated, in cases to which it applies, some but not all of the requirements of sec. 316(a), supra.[1] It is still required that petitioner "during all the period referred to in this subsection has been and still is a person of good moral character, attached to the principles of the Constitution * * *." But since sec. 319(b) has eliminated, in cases to which it applies, the requirement of five years prior residence, the question has arisen: during what period must a petitioner under sec. 319(b) show that he "has been and still is a person of good moral character?".

The Service takes the position that the five year period called for by sec. 316(a) does not apply to such a petition, and that adultery and false testimony within the five years period are not absolute bars, as they would undoubtedly otherwise be in view of sec. 101(f) (2) and (6). A regulation, 8 C.F.R., sec. 319.2,[2]

provides with respect to petitions under sec. 319(b): " * * * It shall be established that *at the time of filing of the petition for naturalization* such person was in the United States pursuant to a lawful admission for permanent residence, and that he is a person of good moral character, attached to the principles of the Constitution * * *." (italics supplied)

However, it is by no means clear that when sec. 319(b) eliminated the requirement of five years prior residence it intended also to eliminate the five year period during which a petitioner is required to have been a person of good moral character, attached to the principles of the Constitution. See sec. 316(a). See also In re Laws, D.C.N.D.Cal., 59 F.Supp. 179; United States v. Mayerhofer, D.C.S.D.Cal., 56 F.Supp. 252. It was not necessary to decide that question in Petition of B., D.C.Md., 156 F. Supp. 761, because although the evidence there proved that the petitioner had committed adultery more than five years before the date of the petition, the evidence did not prove adultery within the five year period. Nor will it be necessary to decide that question in this case. Even if the Service is correct in its belief that good moral character at the time of the filing of the petition is all that is required, and that adultery and false testimony within the five year period are not absolute bars, good moral character is not a momentary attribute; evidence of past misconduct, though it may not be a bar if the applicant has in fact reformed, should be received and considered along with other evidence in determining whether a petitioner has shown good moral character at the time of his or her application. Sec. 316(e), 8 U.S.C.A. § 1427(e); Marcantonio v. United States, 4 Cir., 185 F.2d 934; Petition of B., 156 F.Supp. at page 762; In re Laws, 59 F.Supp. at page 181. The

---

1. Other requirements and prohibitions, such as those contained in secs. 312 and 313, 8 U.S.C.A. §§ 1423 and 1424, still obtain where applicable.

2. As amended, effective January 3, 1955, 19 F.R. 9182, December 24, 1954; and again: effective August 17, 1955, 20 F.R. 5963, August 17, 1955.

evidence in this case does not show that petitioner was a person of good moral character at the time she filed her petition.

### The Facts of This Case

Petitioner was born in Germany in 1932, married a citizen of the United States in Germany in February 1954, and was lawfully admitted for permanent residence in the United States in June 1954. Testimony before a naturalization examiner indicates that the husband "was not a very good husband and that he liked to run around while leaving his wife at home". She secured employment and retained a lawyer to obtain a divorce. Thereafter, in June 1957, her husband filed suit for divorce, alleging desertion and adultery. The answer filed on her behalf stated that upon advice of counsel she was unable to admit, deny or explain the allegations of desertion and adultery. Her brother, who had been living in the same house with her since she left her husband, testified that she and her present, second husband had been living together, sleeping in the same bedroom, for a year. The master reported that adultery had been proven, and a divorce a vinculo matrimonii was granted to the husband in October 1957.

In January 1958 petitioner married her present husband, a master sergeant in the United States Army. He was directed to report to Fort Dix on March 31, 1959, for service in Germany, and applied for and received authority for concurrent travel for his wife and their adopted child. He is now on administrative leave.

On March 20, 1959, petitioner filed her "application to file petition for naturalization", in which she stated that she had never committed adultery. She swore to her answers before a naturalization examiner, who asked her particularly about adultery in view of her statement she had been divorced. After that preliminary examination, petitioner filed her petition for naturalization, No. 40208. The examiner reserved his recommmendation on that petition until he could inspect the record of the divorce proceeding. Petitioner and her husband then consulted her present attorney, who obtained a transcript of the divorce proceeding, including the testimony. Petitioner and her husband told the attorney that the testimony and the finding of adultery were untrue; the attorney thereupon prepared an affidavit, which was executed by petitioner on April 9, 1959, and given to the examiner. In her affidavit petitioner swore that she had not contested the divorce action because she wanted a divorce; that at the time the divorce was pending she became acquainted with her present husband; and that at no time since she entered the United States had she committed adultery or been guilty of any immoral conduct. The examiner was still unwilling to recommend that this court grant the petition, although he was told by his supervisor that the policy of the Service was to recommend allowance in 319(b) cases despite previous misconduct. Accordingly, the examiner conducted a "preliminary examination" on May 20, 1959, at which petitioner was represented by counsel. She admitted that the facts contained in her application were not true; that she had committed adultery, but had been ashamed to admit it, because she did not want to get her present husband into trouble. She also stated, in response to a question by her counsel, that she "thinks" she would have told the examiner the truth if she had been alone with him when he checked her application, but that there was another man in the room at the time.[3] The presence of the other man did not affect the validity of the oath taken by petitioner verifying her application, but the nat-

---

3. An examiner from the Bureau of Budget was present in the room, in the course of his official duties. 8 C.F.R. 332.11(b) provides, in part: "The applicant and such witness shall be questioned under oath separately and apart from one another and apart from the public."

uralization examiner accepted petitioner's explanation as to why she had denied her adultery at that time. Petitioner admitted that the affidavit which her attorney had prepared and submitted to the examiner had also been false, saying "I was just lying again." It is also noteworthy that petitioner had omitted from the list of her former addresses the address at which she had lived in adultery; she testified that she had "overlooked" it.

Since it was clear that her petition No. 40208 was barred by her perjury in support thereof, the examiner, following the instructions of his supervisor, suggested that petitioner ask leave to withdraw that petition, that she file a new application and petition in which she would set out the true facts, and that the Service could recommend the allowance of the new petition despite her adultery and perjury. The new application was prepared on May 25, sworn to and filed on May 28, and a new petition, No. 40503, was filed on May 28. Despite the adultery and the false statements under oath, the Service found as a fact that "the petitioner is and has been a person of good moral character at least since April 10, 1959." However, several days after the hearing the Service withdrew its recommendation that the petition be granted and now recommends denial of the petition "on the ground that good moral character for a reasonable period of time immediately preceding the date of filing the petition has not been shown by the petitioner".

### Discussion

■■ It is obviously desirable that the wives of men in the armed forces who accompany them on service abroad should be citizens of the United States. Sec. 319(b) recognizes that fact, and removes some of the requirements for naturalization of such applicants. It does not provide that such applicants shall be admitted to citizenship however illiterate, immoral or disloyal they may be. The courts still have a responsibility and a duty to perform. This court has recognized what its judges believe to be the policy of the Congress by holding special naturalization hearings on short notice, sometimes immediately, and by accepting evidence of reformation from past immoral conduct whenever the judges can conscientiously do so. E. g. Petition of B., D.C., 156 F.Supp. 761. In the instant case adultery within the past two years is now admitted, and is combined with a number of false statements, deliberately made by petitioner, with the acquiescence of her husband. After hearing the testimony of petitioner and of her husband, along with the statements of her counsel and of the naturalization examiner, and after a careful review of the record, I cannot and do not find that petitioner is a person of good moral character.

### Conclusion

Petition No. 40503 is denied because petitioner is not a person of good moral character.