**Leonard PIGNATELLO, Petitioner,**

v.

**ATTORNEY GENERAL OF the UNITED STATES, Respondent.**

**No. 479, Docket 28772.**

United States Court of Appeals Second Circuit.

Argued May 17, 1965.

Decided Aug. 3, 1965.

As Modified Sept. 7, 1965.

Edward S. Friedland, New York City, for petitioner.

William N. McKee, Jr., Asst. U. S. Atty. (Joseph P. Hoey, U. S. Atty. Eastern Dist. of New York, on the brief), for respondent.

Before WATERMAN, MARSHALL and ANDERSON,* Circuit Judges.

* Judge Marshall, of the panel that heard the case, authored the opinion of August 3 which is modified herein. After that opinion was filed and prior to consideration of the petition for modification Judge Marshall assumed the office of Solicitor General of the United States and disqualified himself from further connection with this case.

MARSHALL, Circuit Judge.

This is a petition to review under section 106 of the Immigration and Nationality Act, as amended in 1961, 8 U.S.C. § 1105a.

We surmise that petitioner was born in Italy in 1914 of Italian nationals and lawfully admitted to the United States in 1919 for permanent residence. Save for his military service abroad, he has lived in the United States continuously since 1919, for a period spanning almost a half-century and consisting of all of his adult life. He is married to an American citizen and is the father of an American citizen son. During World War II petitioner served in the United States Army for a period just short of three years, was a paratrooper, fought valiantly for the United States in military campaigns in France and Germany, and upon termination of his service received an honorable discharge.

In his pleadings, petitioner claims that he was naturalized pursuant to sections 701 and 702 of the Nationality Act of 1940, as amended, 56 Stat. 182–183 (1942), while he was serving in the Army. Section 701[1] liberalized the requirements and procedure for naturalizing those that served honorably in the military service and entered the United States lawfully—a description that petitioner fits. Petitioner pleads that he satisfied the remaining requirements, which in reality consisted of little more than filing an application with the appropriate authorities, and having those authorities perform the ceremonial act of granting naturalization. Section 702[2] empow-

1. Sec. 701. Notwithstanding the provisions of sections 303 and 326 of this Act, any person not a citizen, regardless of age, who has served or hereafter serves honorably in the military or naval forces of the United States during the present war and who, having been lawfully admitted to the United States, including its Territories and possessions, shall have been at the time of his enlistment or induction a resident thereof, may be naturalized upon compliance with all the requirements of the naturalization laws except that (1) no declaration of intention and no period of residence within the United States or any State shall be required; (2) the petition for naturalization may be filed in any court having naturalization jurisdiction regardless of the residence of the petitioner; (3) the petitioner shall not be required to speak the English language, sign his petition in his own handwriting, or meet any educational test; and (4) no fee shall be charged or collected for making, filing, or docketing the petition for naturalization, or for the final hearing thereon, or for the certification of naturalization, if issued: Provided, however, That (1) there shall be included in the petition the affidavits of at least two credible witnesses, citizens of the United States, stating that each such witness personally knows the petitioner to be a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States, (2) the service of the petitioner in the military or naval forces of the United States shall be proved by affidavits, forming part of the petition, of at least two citizens of the United States, members or former members during the present war of the military or naval forces of the noncommissioned or warrant officer grade or higher (who may be the witnesses described in clause (1) of this proviso), or by a duly authenticated copy of the record of the executive department having custody of the record of petitioner's service, showing that the petitioner is or was during the present war a member serving honorably in such armed forces, and (3) the petition shall be filed not later than one year after the termination of the effective period of those titles of the Second War Powers Act, 1942, for which the effective period is specified in the last title thereof. The petitioner may be naturalized immediately if prior to the filing of the petition the petitioner and the witnesses required by the foregoing proviso shall have appeared before and been examined by a representative of the Immigration and Naturalization Service.

2. Sec. 702. During the present war, any person entitled to naturalization under section 701 of this Act, who while serving honorably in the military or naval forces of the United States is not within the jurisdiction of any court authorized to naturalize aliens, may be naturalized in accordance with all the applicable provisions of section 701 without appearing before a naturalization court. The petition for naturalization of any petitioner under this section shall be made and

ered representatives of the Immigration and Naturalization Service designated by the Commissioner or a Deputy Commissioner to perform the functions otherwise reserved for a naturalization court, including granting naturalization and issuing certificates of citizenship, if the alien serving in the military is "not within the jurisdiction of any court authorized to naturalize aliens." Petitioner alleges that such a designated representative administered an oath of allegiance and swore him in as a citizen while he was serving in the armed forces.

In October 1954 deportation proceedings were commenced against petitioner. Section 241(a) (4) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a) (4) provides that "any alien in the United States * * * shall, upon the order of the Attorney General, be deported who * * * at any time after entry is convicted of two crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct * * *." This provision was invoked by reason of the fact, apparently undisputed, that in 1936 petitioner was convicted of armed robbery and in 1953 he was convicted of breaking into a United States Post Office with intent to commit larceny. The deportation proceedings were commenced while petitioner was in a federal penitentiary in Atlanta, Georgia, serving the sentence for this second conviction. At the outset of the hearing before the Special Inquiry Officer, which was conducted only upon two weeks' notice, petitioner vigorously demanded the opportunity to be represented by counsel at the hearing. He claimed that he was unable to pay the expenses of counsel to come to Atlanta and that the decision to conduct the proceedings in Atlanta thus had the effect of depriving him of the assistance of counsel. The Special Inquiry Officer was willing to postpone the hearing for one month. But he refused to adjourn it until 1956, at which time petitioner would be released and back home in New York, nor did the officer offer to pay the expenses of counsel coming to Atlanta or to provide petitioner with local counsel, although there is no indication that he disbelieved petitioner's claim as to lack of funds. Petitioner registered his protest by walking out of the hearing. In his absence the hearings were concluded in short order, the only other witness being an investigator for the Immigration and Naturalization Service. In February 1955 an order was entered finding petitioner to be a deportable alien within the meaning of section 241(a) (4) and directing that he be deported. Petitioner appealed this order to the Board of Immigration Appeals. The Board dismissed the appeal, reasoning that there were no procedural irregularities in the hearing, that "there was substantial evidence * * * to support the special inquiry officer's conclusion," and that petitioner is ineligible for discretionary relief. The Board's opinion closed with this regret: "[W]hile we are aware of the appealing factors present in this case, we have no alternative but to affirm the decision of the special inquiry officer * * *."

More than five years later, on October 5, 1960, petitioner was notified by the Immigration and Naturalization Service that in 30 days he would be deported to Italy and that he "should arrange * *

sworn to before, and filed with, a representative of the Immigration and Naturalization Service designated by the Commissioner or a Deputy Commissioner, which designated representative is hereby authorized to receive such petition in behalf of the Service, to conduct hearings thereon, to take testimony concerning any matter touching or in any way affecting the admissibility of any such petitioner for naturalization, to call witnesses, to administer oaths, including the oath of the petitioner and his witnesses to the peti-

tion for naturalization and the oath of renunciation and allegiance prescribed by section 335 of this Act, and to grant naturalization, and to issue certificates of citizenship: Provided, that the record of any proceedings hereunder together with a copy of the certificate of citizenship shall be forwarded to and filed by the clerk of a naturalization court in the district in which the petitioner is a resident and be made a part of the record of the court.

[his] personal affairs accordingly." At that point, petitioner moved the Board of Immigration Appeals to reopen the deportation proceedings to permit the introduction of evidence to establish his citizenship and, in the alternative, to afford him the opportunity to apply for discretionary relief. The motion was denied, and technically that is the order before us in this timely section 106(a) petition to review, see Giova v. Rosenberg, 379 U.S. 18, 85 S.Ct. 156, 13 L.Ed. 2d 90 (1964).

■ (1) *The Claim of Citizenship*, Petitioner claims to be a national of the United States. This claim is certainly not frivolous, and a genuine issue of material fact bearing on petitioner's claim of citizenship has been presented. Thus, under section 106(a) (5) (B) of the Immigration and Nationality Act, 8 U.S.C. § 1105a(a) (5) (B), we transfer the proceedings to the United States District Court for the Eastern District of New York, the district in which petitioner resides, for a hearing *de novo* on the claim of citizenship and we hold this petition for review in abeyance pending this judicial determination of petitioner's claim of citizenship.

■ Section 106(a) (5) codifies, and establishes the procedure for effectuating the constitutional principle announced by Mr. Justice Brandeis in Ng Fung Ho v. White, 259 U.S. 276, 284, 42 S.Ct. 492, 495, 66 L.Ed. 938 (1922)—that the claim of citizenship must be judicially rather than administratively determined since "[j]urisdiction in the executive to order deportation exists only if the person arrested is an alien [and] the claim of citizenship is thus a denial of an essential jurisdictional fact." Accord: Kessler v. Strecker, 307 U.S. 22, 34–35, 59 S.Ct. 694, 83 L.Ed. 1082 (1939). It is not inconsistent with this principle to require, as the statute does, that there be a modicum of substantiality to the claim of citizenship. However, what the petitioner is seeking, and is entitled to, is a *de novo* judicial determination of the claim, not judicial review of the administrative disposition of that claim. Thus

what section 106(a) (5) requires, as a condition of a *de novo* judicial determination of the claim of citizenship, is nothing more than the claim not be frivolous. Petitioner's claim of citizenship can hardly be classified as frivolous, and the Board of Immigration Appeals in its decision denying a reopening of the deportation proceedings did not take a contrary view. It merely reasoned, quite correctly, that this administrative relief was not a prerequisite to obtaining the judicial determination.

■ The requirement of subdivision (B) of section 106(a) (5) that a genuine issue of material fact be presented goes, not to whether petitioner is entitled to a *de novo* judicial determination of the claim of citizenship, but to whether this determination is to be made only after an evidentiary hearing in a district court or whether it could be made by the circuit court of appeals on the basis of the pleadings and affidavits. Drawing on the familiar principles relating to summary judgment in the federal courts, the statute permits the circuit court of appeals to determine the claim of citizenship only "when it appears from the pleadings and affidavits filed by the parties that no genuine issue of material fact is presented." If such an issue does appear, then the proceedings should be transferred to a district court for an evidentiary hearing on this claim of citizenship, and that determination would be subject to appellate review by this Court, according to those appellate standards used in declaratory judgment proceedings commenced under 28 U.S.C. § 2201.

Petitioner's claim of citizenship involves delicate issues of credibility that could only be resolved with the benefit of live testimony and a more complete documentary record. His claim, that he was naturalized pursuant to section 701 and section 702 of the Nationality Act of 1940 while he was serving in the military in World War II, is coherent and credible, especially when supplemented by an affidavit (not part of the administrative record) by the leader of his company, and by the fact that his discharge papers

list him as an American citizen. Respondent refers us to a written statement given to an investigator for the Immigration and Naturalization Service in 1954, while appellant was in prison and he was without the assistance of counsel. In this statement, petitioner states that he "applied for 1st papers in New York in 1946" after getting out of the army. Yet if this prior allegedly inconsistent statement is introduced into evidence, it is for the trier-of-fact to decide what petitioner understood his statement to mean, if anything, to determine whether this statement was the result of oversuggestion by the investigator, and, if need be, whether this statement should be believed. Respondent also seeks to dispute petitioner's claim of citizenship by pointing to such evidence (also not part of the administrative record) as an unexecuted application for naturalization found in petitioner's army record and a certificate from an officer of the Immigration and Naturalization Service attesting to the absence of any record of naturalization of petitioner. Yet, once again, it is for the trier-of-fact to sift and weigh this evidence, to determine whether petitioner had executed another application and filed it with the appropriate authorities, and whether it was possible or likely that in a time of war and chaos one record of naturalization may have been misplaced or lost by the authorities, even though petitioner did all he could to assure that the statutory requirements were satisfied. We thus find that genuine issues of material fact bearing on petitioner's claim of citizenship have been presented, and we transfer this proceeding to a district court for an evidentiary hearing *de novo* to resolve this issue, and we do so with the thought that "[w]hen we deal with citizenship we tread on sensitive ground," United States v. Minker, 350 U.S. 179, 197, 76 S.Ct. 281, 291, 100 L.Ed. 185 (1956) (Douglas, J., concurring), quoted approvingly in Nishikawa v. Dulles, 356 U.S. 129, 135 n. 6, 78 S.Ct. 612, 2 L.Ed.2d 659 (1958), which is particularly apt in the special circumstances of this case, where the individual has valiantly risked his life for this country, lawfully entered the country, and has lived here for more than fifty years.

■ (2) *Discretionary Relief.* The parties stipulated in the district court that the sole issue for judicial inquiry was whether petitioner is a citizen. Nevertheless, it is not amiss to point out that the Immigration and Naturalization Service now concedes that the petitioner, if not a citizen, is prima facie eligible for discretionary relief from deportation. For example, it would seem that petitioner, if indeed an alien, may, as a result of congressional enactments in 1961 and 1962, be statutorily eligible to apply for suspension of deportation under 8 U.S.C. (1964 ed.) § 1254 (b), and, being so eligible to apply, may also be eligible to obtain relief.

Therefore, if it is determined in the district court that petitioner was never naturalized, and if that finding is left undisturbed by this court, then the Board of Immigration Appeals should reopen its proceedings so as to allow petitioner to apply for discretionary relief from deportation. In mentioning this possible alternative disposition, which is based on the premise that petitioner is not a citizen, we do not intend to prejudge the merits of petitioner's claim of citizenship in the slightest degree.

■ We also hold that if it is finally determined that petitioner is an alien, and the proceedings are reopened, the petitioner may apply for an alternative form of discretionary relief— termination of the deportation proceedings so as to allow petitioner to apply for naturalization. This relief would remove the bar to the petitioner now applying for naturalization posed by section 318 of the Immigration and Nationality Act, 8 U.S.C. § 1429, which provides that no person against whom there is outstanding a final finding of deportability shall be naturalized.

On at least one occasion, In the Matter of B–6, I. & N. Dec. 713 (1955), the Board of Immigration Appeals has termi-

nated the deportation proceedings in order to remove the section 318 bar to naturalization. The deportable alien in that case presented a far more appealing case than does petitioner, but the point is simply that the power to grant such discretionary relief was there firmly established. The Board declared: "[T]here exists inherent authority in the Attorney General to terminate deportation proceedings for the limited purpose of permitting the alien to file a petition for naturalization and to be heard thereon by a naturalization court and such authority has been delegated to this Board" by the regulations, 8 C.F.R. § 3.1(d). Id. at 720. This is in accord with the statute, at least when the alien is deportable under section 244(a) (2). The statute does not command the Attorney General to deport all aliens who have been convicted of two crimes involving a moral turpitude; it merely states that any such alien "shall, upon order of the Attorney General, be deported * * *"

In its order denying petitioner's motion to reopen the proceedings the Board faintly recognized its power to grant this discretionary relief, noting that it is used sparingly. However, it is not clear from the opinion whether the Board thought that petitioner was ineligible for such discretionary relief or whether it denied this termination as an exercise of discretion. Neither ground would justify the denial of petitioner's motion to reopen.

■ In determining whether the proceedings should be reopened to allow petitioner to apply for a termination of the proceedings, eligibility for the termination is established if petitioner makes a preliminary showing that the statute does not preclude him from establishing eligibility for naturalization. No purpose would be served by allowing petitioner to apply for a termination of the deportation proceedings for the limited purpose of permitting the alien to file a petition for naturalization and to be heard by the naturalization court, if that court was without the power to grant naturalization to petitioner. Of the requirements for naturalization set forth in section 316 of the Immigration and Nationality Act, 8 U.S.C. § 1427, only that requiring petitioner to be "a person of good moral character during all the period referred to in this subsection" causes concern. This period, during which good moral character is required, is not more than the five years immediately preceding the date of filing his petition for naturalization, see, In re Suey Chin, 173 F.Supp. 510, 512 (S.D.N.Y.1959) (suggesting that section 329, 8 U.S.C. § 1440, might reduce this period for honorably discharged veterans of World War II), and since petitioner's convictions and confinement apparently occurred prior to that period, section 101(f) would not bar a naturalization court from finding that petitioner was a person of good moral character. There are cases, noted in Marcantonio v. United States, 185 F.2d 934 (4 Cir. 1950) allowing the naturalization court to consider the petitioner's conduct prior to this five year period, and this would bring earlier convictions into view. However, the naturalization court need not take this pre-period conduct into account, and if the court does reach back, this conduct only bears on the question whether petitioner has shown good moral character for the required period immediately preceding the application, the conduct will not trigger the mandatory provisions of section 101(f), and the court could balance this pre-period misconduct against the pre-period conduct demonstrating good moral character—for example, petitioner's courageous and heroic service in the United States Army. It is ultimately for the naturalization court to decide whether petitioner has shown good moral character for the required period immediately preceding his application for naturalization, if one is ever filed. We merely hold that respondent has not yet demonstrated that petitioner is statutorily ineligible for naturalization.

In denying petitioner's motion to reopen the deportation proceedings, the Board has prevented petitioner from *applying* for a discretionary termination.

It is therefore impossible for respondent to justify this refusal to reopen the deportation proceedings on the ground that, as a discretionary matter, petitioner is not entitled to such a termination where this type of discretionary relief is sought. By preventing petitioner from applying for such relief, no record could have been established upon which the exercise of discretion must be based and the prior administrative record was completely inadequate for these purposes. Where this type of discretionary relief is sought, the Board can condition the reopening of a deportation proceeding on reasonable requirements, including that there be a reasonable possibility of petitioner obtaining the discretionary termination. On the basis of the facts alleged in petitioner's moving papers to the Board, and supported by affidavits, it cannot be said that there is no reasonable possibility of granting such relief, even if this relief is granted most sparingly. For example, in a hearing on the reopened proceedings, petitioner might be able to establish that if he had not been naturalized during his military service, the fault lies entirely with government officers since he had reasonably relied on affirmative action by these officers which were purported to have the effect of naturalizing him. An affidavit,

not previously before the Board, by a platoon leader in petitioner's company tends to support such a theory; and this reasonable reliance plus petitioner's distinguished military service and the fact that he lawfully entered the United States in 1919 and lived here ever since might warrant this extraordinary discretionary relief. This is an issue for the Board to ultimately decide. We merely hold that there is a reasonable possibility of the Board granting such relief and that petitioner should be afforded a full and fair opportunity of applying for this discretionary relief— an opportunity which he has not of yet been afforded.

We transfer these proceedings to the United States District Court for the Eastern District of New York for a hearing *de novo* on petitioner's claim of citizenship. If it is there determined that petitioner had not been naturalized as claimed, and this determination is left undisturbed by this Court, then the Board of Immigration Appeals should reopen its deportation proceedings so as to enable petitioner to reapply for suspension of the deportation proceedings and in the alternative, termination of the deportation proceedings for the limited purpose of allowing petitioner to apply then for naturalization.