**Hollis BOATSWAIN, Petitioner,**

v.

**John ASHCROFT, United States Attorney General, Respondent.**

No. 99–CV–8517(FB).

United States District Court, E.D. New York.

June 9, 2003.

Nancy Morawetz, Anjana Malhotra, Legal Intern, Tony Lu, Legal Intern, Washington Square Legal Services, New York City, for petitioner.

Roslynn R. Mauskopf, United States Attorney, Eastern District of New York, by

Steven J. Kim, Assistant United States Attorney, Brooklyn, NY, for respondent.

## MEMORANDUM & ORDER

BLOCK, District Judge.

Petitioner, Hollis Boatswain ("Boatswain"), a citizen of Trinidad and a legal permanent resident of the United States, seeks review, pursuant to 8 U.S.C. § 1421(c), of the Immigration and Naturalization Service's ("INS") denial of his application for naturalization.[1] Boatswain claims he is entitled to naturalize, notwithstanding his significant criminal history, under a special provision of the Immigration and Nationality Act ("INA") providing relaxed naturalization requirements for aliens who served in the United States military during designated times of hostility. See 8 U.S.C. § 1440. Respondent argues that Boatswain's application must be denied because 1) he must establish his "good moral character," and 2) he is statutorily barred from making such a showing by virtue of his criminal history. The Court agrees with respondent.

## BACKGROUND

### I. Procedural History and Hearing

In September 1999, while in INS detention, Boatswain submitted his naturalization application. On November 23, 1999, an Immigration Judge found Boatswain removable based solely upon a November 1998 conviction for Health Care Fraud, see 18 U.S.C. § 1347, for which he had been sentenced to one year of incarceration. On June 22, 2000, the Board of Immigration Appeals ("BIA") dismissed Boatswain's appeal, and the Immigration Judge's removal order became final.[2]

On September 7, 2000, the Court stayed Boatswain's removal order because the INS had yet to rule on Boatswain's naturalization application. See Boatswain v. Ashcroft, 99 CV 8517 (E.D.N.Y. Sept. 7, 2000) (staying removal order); see also 8 U.S.C. § 1429 (permitting veterans to naturalize notwithstanding any final order of removal); 8 C.F.R. § 329.2(e)(3) (permitting veterans to apply for naturalization during removal proceedings). On February 5, 2002, the INS denied Boatswain's naturalization application. See Stipulation ¶ 35. In April and May 2002, the Court conducted a de novo hearing to determine Boatswain's eligibility for citizenship. See 8 U.S.C. § 1421(c) (establishing right to de novo judicial review of denials of naturalization applications). Throughout his proceedings before the INS and the Court, Boatswain has remained in INS detention.

At the hearing, the following facts were adduced: In 1969, Boatswain came to the United States from Trinidad; in 1974 he became a legal permanent resident. Boatswain has five children, all of whom are United States citizens. For the past twenty-six years Boatswain has been living in Brooklyn, New York with the mother of three of his children. The other two children are from a previous marriage. Three of his children testified persuasively about the loving and supportive role their father has played in their lives. Boatswain has encouraged his children to value education

---

**1.** 8 U.S.C. § 1421(c) provides: "A person whose application for naturalization ... is denied ... may seek review of such denial before the United States district court ... Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application."

**2.** Boatswain states that he thereafter appealed to the Fifth Circuit, which dismissed the appeal. See Boatswain Mem. at 22, Dec. 22, 2000.

and has consistently assisted in their schooling.

In 1975, during the period of Vietnam hostilities, Boatswain voluntarily enlisted in the United States Army. After basic training, he became a member of the Twenty–Fifth Infantry Division and served on a military base in Hawaii. In August 1976, he was honorably discharged.

It was further established at the hearing that Boatswain's criminal history was significantly more extensive than the Health Care Fraud conviction. In the early 1980's, he became involved in the drug trade as a small time dealer of marijuana. Between 1982 and 1998, he was convicted seventeen times for Criminal Sale of Marijuana in the Fourth Degree, *see* N.Y. Penal Law § 221.40, eight times for Possession of Marijuana, *see* N.Y. Penal Law §§ 220.03, 221.10, 221.15, and seven times for Theft of Services, N.Y. Penal Law § 165.15. In relation to these convictions, Boatswain received several short sentences of incarceration—the longest being eight months. Boatswain concedes that his criminal history qualifies him as an aggravated felon under the INA. *See* Tr. at 89 (May 2, 2002).[3]

## II. Legal Framework

### A. *Present Statutory and Regulatory Framework*

Wading through the statutory scheme is not a simple task because, as legal commentators have observed, the immigration laws are a "patchwork", containing "numerous inconsistencies and vagaries." David Jones, *U.S. Immigration—A Legacy of Reform and Reorganization and Possible Solutions,* 11 Fla. J. Int'l L. 409, 427 (1997); *see also* Mary McGee Light, 45 Drake L.Rev. 789 (1997 ("Immigration law consists of a patchwork of statutes and regulations.")).

Chapter 12 of Title 8 U.S.C. §§ 1101–1537, entitled "Immigration and Nationality," governs citizenship, nationality and naturalization. The sections governing naturalization are contained in Subchapter III, 8 U.S.C. §§ 1421–1504 ("Nationality Through Naturalization").[4] Under § 1427(a), which sets forth the general requirements for naturalization, "[n]o person shall be naturalized unless [the] petitioner, (1) immediately preceding the date of filing his petition for naturalization has resided continuously, after being lawfully admitted for permanent residence within the United States for at least five years * * *, and (3) during all the period referred to in this subsection *has been and still is a person of good moral character ....*" (emphasis added). Because the "period referred to" in § 1427(a)(3) is the five-year residency period set forth in § 1427(a)(1), § 1427(a) creates a five-year good moral character requirement. *See In re Kovacs,* 476 F.2d 843, 844 (2d Cir.1973).

Subsection (e) of § 1427 provides:

---

3. The INA definition of aggravated felony was broadened in 1990. *See* Act of Nov. 29, 1990, Pub.L. 101–246 (1990). It is undisputed that all of Boatswain's post 1990 convictions for Criminal Sale of Marijuana in the Fourth Degree qualify as aggravated felonies. *See* 8 U.S.C. § 1101(a)(43)(B); *United States v. Graham,* 927 F.Supp. 619, 621 (W.D.N.Y.1996) (holding that a New York conviction for criminal sale of marijuana is an aggravated felony). The parties disagree as to whether Boatswain's conviction for Health Care Fraud also qualifies as an aggravated felony.

4. Subchapter I, 8 U.S.C. §§ 1101–1105, entitled "General Provisions", contains, *inter alia,* definitions of INA terms. Subchapter II, 8 U.S.C. §§ 1151–1378, entitled "Immigration", governs, *inter alia,* admission and removal of aliens. Subchapter IV, 8 U.S.C. §§ 1521–1525, is entitled "Refugee Assistance;" Subchapter V, 8 U.S.C. §§ 1521–1537, is entitled "Alien Terrorist Removal Procedures."

In determining whether the applicant has sustained the burden of establishing good moral character and the other qualifications for citizenship *specified in subsection (a) of this section,* the Attorney General shall not be limited to the applicant's conduct during the five years preceding the filing of the application, but may take into consideration as a basis for such determination the applicant's conduct and acts at any time prior to that period.

(emphasis added). Thus, although an applicant *must* show good moral character for the five-year period set forth in § 1427(a), § 1427(e) affords the INS discretion to "take into consideration ... the applicant's conduct and acts at any time prior to" that period "in determining whether the applicant has sustained the burden of establishing good moral character" during the five-year period.

Notwithstanding these general provisions of § 1427, Congress has prescribed significantly relaxed requirements for the naturalization of applicants who have served at any time in the armed forces during a designated time of war. *See* 8 U.S.C. § 1440. Specifically, subsection (a) of § 1440 sets forth two overarching requirements for the naturalization of such aliens: [1] that they have served honorably during a time of military conflict, *and* [2] that they were in the United States, or certain designated territories, at the time of their "enlistment, reenlistment, extension of enlistment, or induction" into the military *or* that "at any time subsequent to enlistment or induction such person shall have been lawfully admitted to the United States for permanent residence." 8 U.S.C. § 1440(a).

Subsection (b) of § 1440 states, in pertinent part: "A person filing an application under subsection (a) of this section *shall comply in all other respects with the requirements of this subchapter ....*" 8 U.S.C. § 1440(b) (emphasis added). By this incorporation, these requirements include the five-year residency period for which good moral character must be established under § 1427(a), in addition to other requirements, such as knowledge of English and United States history and the principles of the country's form of government. *See* 8 U.S.C. §§ 1423 and 1429. However, subdivisions (b)(1)-(3) of § 1440 create certain exceptions to this requirement that applicants comply with all the requirements of Subchapter III. Relevant to this case is subsection (b)(2), which states that "no period of residence or specified period of physical presence within the United States or any State or district of the Service in the United States shall be required." 8 U.S.C. § 1440(b)(2).[5]

Title 8 U.S.C. § 1439 governs naturalization for peacetime veterans. The statute requires, *inter alia,* such applicants to have "served honorably at any time in the armed forces of the United States for a period or periods aggregating three years", 8 U.S.C. § 1439(a), and provides that "service under honorable conditions, and good moral character" during the required three-year period may be shown by "duly authenticated copies ... of the records of such service," 8 U.S.C. § 1439(e), provided the petition is filed within six months of the termination of service. Such copies of records of service "shall be accepted in lieu of compliance with the" five-year residence and good moral charac-

---

**5.** Subsection (b)(1) provides that applicants may be naturalized regardless of age or lawful admission as a permanent resident. 8 U.S.C. § 1440(b)(1). Subsection (b)(3) provides that an applicant shall prove his service in and honorable discharge from the armed forces during wartime "by a duly authenticated certification from the executive department under which the applicant served or is serving...." 8 U.S.C. § 1440(b)(3).

ter requirements of § 1427(a). 8 U.S.C. § 1439(e). If the petition is filed more than six months after the termination of service, the applicant must meet the five-year residence and good moral character requirements of § 1427(a). *See* 8 U.S.C. § 1439(d).

Unlike the explicit good moral character requirement for peacetime veterans in § 1439, there is no specific mention of good moral character for wartime veterans in 8 U.S.C. § 1440. To fill this perceived gap, the INS promulgated a regulation in 1996, which states in pertinent part:

> To be eligible for naturalization under section [8 U.S.C. § 1440(a)], an applicant must establish that he or she:
>
> \* \* \*
>
> Has been, *for at least one year prior to filing the application* for naturalization, and continues to be, of good moral character, attached to the principles of the Constitution of the United States, and favorably disposed toward the good order and happiness of the United States . . .

8 C.F.R. § 329.2(d) (emphasis added); *see also* 8 U.S.C. § 1103 (granting the Attorney General the power to "establish such regulations . . . as he deems necessary for carrying out his authority under the provisions of [the INA]").

Title 8 U.S.C. § 1101(f) contains seven statutory bars to a finding of good moral character. Six of the bars pertain to particular conduct occurring "within" or "during" the "period for which good moral character is required to be established," 8 U.S.C. § 1101(f), such as the five-year residency period prescribed in 8 U.S.C. § 1427(a) and the three-year period for peacetime service under § 1439(a). *See* 8 U.S.C. § 1101(f)(1) (bar for "habitual drunkard[s]"); 8 U.S.C. § 1101(f)(3) (bar for applicants convicted of specified crimi-

nal offenses); 8 U.S.C. § 1101(f)(4) (bar for persons whose "income is derived principally from illegal gambling"); 8 U.S.C. § 1101(f)(5) (bar for persons convicted of two or more gambling offenses); 8 U.S.C. § 1101(f)(6) (bar for "one who has given false testimony for the purpose of obtaining any benefits under this chapter"); 8 U.S.C. § 1101(f)(7) (bar for persons incarcerated for one hundred and eighty days or more).

In contrast, the final statutory bar, § 1101(f)(8), applies to "one who *at any time* has been convicted of an aggravated felony." 8 U.S.C. § 1101(f)(8) (emphasis added).

### B. *Statutory History*

Sections 1439 and 1440 were enacted concurrently in 1952, when the INS conducted a sweeping revision of the immigration laws. The predecessors to §§ 1439 and 1440 were 8 U.S.C. § 724 (1940), 8 U.S.C. § 1001 (1942) and 8 U.S.C. § 724a (1948). The predecessor to § 1427(a) was 8 U.S.C. § 707(a) (1940), which was identical to current § 1427(a).

Section 724, passed in 1940, applied to both wartime and peacetime veterans. It was in all relevant respects identical to current § 1439, containing the same provision for showing good moral character during the three-year period of service through authenticated records, in lieu of compliance with § 707(a)'s five-year good moral character requirement, provided the petition was filed within six months of the termination of service. *See* 8 U.S.C. § 724(e) (1940).

In 1942, Congress enacted a statute specifically applicable to World War II ("WW II") servicemen and servicewomen. *See* 8 U.S.C. § 1001 (1942). The principle difference between this statute and § 724 was that § 1001 did not require three years of

service by WW II servicepersons. It did provide, however, that applicants must otherwise "compl[y] with all the requirements of the naturalization laws...." 8 U.S.C. § 1001 (1942). Those requirements included the provisions of former § 707(a), which, as noted, were the same as current § 1427(a). Section 1001 further required that applicants must furnish "the affidavits of at least two credible witnesses, citizens of the United States, stating that each such witness personally knows the petitioner to be a person of good moral character...." 8 U.S.C. § 1001 (1942). Thus, while § 724's three-year period of service was eliminated, good moral character was still required.

After WW II, in 1948, Congress passed 8 U.S.C. § 724a (1948), which replaced § 1001 and extended its coverage to all wartime servicepersons, not just those who had served in WW II. Thus, no stated period of service was required of *any* wartime serviceperson. Like § 1001, § 724a required applicants to "comply in all respect[s] with the requirements of this chapter," 8 U.S.C. § 724a (b) (1948), including the requirements of former § 707(a).

### III. Parties' Contentions

It is undisputed that Boatswain satisfies the two explicit requirements of 8 U.S.C. § 1440(a) (presence at enlistment and honorable service during wartime). The respondent argues, however, that Boatswain cannot satisfy the one-year regulatory good moral character requirement; moreover, even if there were no such regulatory requirement, § 1440(b) should be deemed to statutorily require a showing of good moral character, at least at the time of application. Ultimately, respondent argues that since Boatswain must show good moral character at some point in time, he is barred by 8 U.S.C. § 1101(f)(8) from making that showing by virtue of his aggravated felony convictions.

In opposition to the respondent's contention that he must satisfy the regulatory and/or statutory requirement of good moral character, Boatswain first argues that an applicant under § 1440 need not make a showing of good moral character. He points to 1) the absence of any language in § 1440 addressing good moral character; 2) the explicit exception in § 1440 to § 1427(a)'s residence requirement, to which the good moral character requirement is tethered, and 3) a comparison to 8 U.S.C. § 1439. With respect to this comparison, he reasons:

> [Section 1439(e)] explicitly requires a showing of good moral character and provides that authenticated records of qualifying honorable service can suffice to make this showing.... By contrast, [§ 1440], which was enacted concurrently with [§ 1439], makes no reference to a showing of good moral character. "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir.1972) (cited in *INS v. Cardoza–Fonseca*, 480 U.S. 421, 432, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987)).

Pet'r's Mem. at 11 (some citations omitted). It follows, Boatswain argues, that the regulation promulgated by the INS to fill the good moral character gap in § 1440, 8 U.S.C. § 1440(b)(2), exceeds the INS's rule-making authority.

With respect to 8 U.S.C. § 1101(f)(8), Boatswain argues that, even assuming an applicant under 8 U.S.C. § 1440 is not exempt from the good moral character requirement under 8 U.S.C. § 1427,

§ 1101(f)(8)'s bar applies "only during the period for which good moral character is required to be established," 8 U.S.C. § 1101(f), and because 8 U.S.C. § 1440 has no designated period within which good moral character must be demonstrated, § 1101(f)(8) is inapplicable. Ultimately, Boatswain claims that because § 1101(f)(8) is not a bar to a showing of good moral character, if it be required, the Court should determine that he has satisfied the burden of establishing his good moral character.

## DISCUSSION

█ Initially, there is some plausibility to Boatswain's argument that the INS exceeded its regulatory authority in fixing a specified period of time within which war veterans must establish good moral character. *See Aid Ass'n for Lutherans v. U.S. Postal Serv.,* 321 F.3d 1166, 1173 (D.C.Cir.2003) (when passing upon the legality of a regulation, the court must determine whether "agency's interpretation . . . reflects a reasonable construction of" the statute). The import of the INS regulation would be to trigger the statutory bars under § 1101(f) that attach to stated periods of time during which good moral character must be established. The issue need not be addressed in this case since all that must be resolved is whether § 1440 requires a showing of good moral character at any time at all, and, if so, if there is any escape from the sweeping reach of the all-inclusive bar of § 1101(f)(8) proscribing good moral character for "one who at any time has been convicted of an aggravated felony." [6]

## I. The Judicial Precedents

Preliminarily, there are general propositions which govern applications for natu-ralization. The applicant bears the burden "to show eligibility for citizenship in every respect," *INS v. Pangilinan,* 486 U.S. 875, 884, 108 S.Ct. 2210, 100 L.Ed.2d 882 (1988), and must strictly comply with the requirements for citizenship articulated by Congress. *See Fedorenko v. United States,* 449 U.S. 490, 506–07, 101 S.Ct. 737, 66 L.Ed.2d 686 (1981). When doubt exists, it must be resolved in favor of the government. *See Berenyi v. District Dir.,* 385 U.S. 630, 637–39, 87 S.Ct. 666, 17 L.Ed.2d 656 (1967).

There is sparse judicial precedent addressing the issue of good moral character for wartime veterans subsequent to the enactment of § 1440. In *In re Suey Chin,* 173 F.Supp. 510 (S.D.N.Y.1959), Judge Weinfeld deduced that the exemption under § 1440(b) from the five-year residency provision under § 1427(a) resulted in the absence of any fixed period of time for establishing good moral character. Nonetheless, he assumed, without explanation, that § 1440 required a showing of good moral character at some point in time, noting that the INS took the position, without submission of authorities, that " 'it has been the standard practice in determining whether the requirement of good moral character has been met to give consideration to petitioner's conduct during a reasonable period of time immediately preceding the date of the petition.' " *Id.* at 512. Given this assumption, he adopted the view most favorable to the petitioner, requiring that good moral character be determined "at least from the date of the filing of the petition for naturalization to the date of the hearing." *Id.*

The Second Circuit addressed the issue in passing in *Pignatello v. United States,*

---

6. The question of 8 C.F.R. § 329.2(d)'s validity would be squarely presented if the government were to rely on the regulation's one-year period to trigger any of the first six bars in 8 U.S.C. § 1101(f) against a § 1440 applicant.

384

350 F.2d 719 (2d Cir.1965) (Marshall, J.). There, the INS had ordered Pignatello deported after he had been convicted of armed robbery and larceny. In an effort to avoid deportation, Pignatello raised the claim that he had been naturalized during his service in WW II pursuant to former 8 U.S.C. § 1001 (1942), and an additional statute, 8 U.S.C. § 1002 (1942), allowing, *inter alia*, a duly designated representative of the INS "to perform the functions otherwise reserved for a naturalization court, including granting naturalization and issuing certificates of citizenship, if the alien serving in the military is 'not within the jurisdiction of any court authorized to naturalize aliens.'" *Pignatello*, 350 F.2d at 722.

The Second Circuit remanded the case for a hearing on Pignatello's claim to have been naturalized in that fashion. The court added that "if it is finally determined" that Pignatello had not been so naturalized, he could nonetheless seek to be naturalized under current § 1440. Commenting, in *dicta*, on § 1440's requirements, the court assumed, without discussion, that some period of good moral character was required, citing *Suey Chin. See Pignatello*, 350 F.2d at 725 (reading *Suey Chin* to "suggest[ ] that ... [§ 1440] might reduce [§ 1427's five-year period] for honorably discharged veterans of World War II"). Although the court did not fix a particular period during which good moral character would be required, it did opine that pre-period conduct could be taken into account to determine if Pignatello had "shown good moral character for the required period immediately preceding his application for naturalization, if one is ever filed." *Id.* at 725.

All other decisions come from the Ninth Circuit. In *Santamaria–Ames v. Immigration and Naturalization Serv.*, 104 F.3d 1127 (9th Cir.1996), the decisive issue was whether conduct prior to the

then recently established one year regulatory period under 8 C.F.R. § 329(d) could be considered in assessing whether the petitioner possessed the requisite good moral character during that period. *See id.*, 104 F.3d at 1129 ("Because Congress did not specify the time period during which a qualifying noncitizen veteran should demonstrate good moral character, the [INS] promulgated [8 C.F.R. § 392.2(d).]"). Drawing analogously from a prior precedent, *Yuen Jung v. Barber*, 184 F.2d 491 (9th Cir.1950), addressing the question of whether the conduct of peacetime veterans, prior to the three year requisite stated period for showing good moral character under the predecessor to § 1439 (former § .724), could be taken into account, the court held that pre-regulatory conduct could not be the *sole* basis for denying naturalization, but that it may be considered as circumstantial evidence of whether the petitioner was of good moral character during the one year period, provided the petitioner was afforded the opportunity to establish that he had reformed and rehabilitated from such prior conduct during that stated period. As it articulated:

In accordance with *Yuen*, we hold that under 8 U.S.C. § 1440 and 8 C.F.R. § 329(d) the pertinent inquiry is whether the petitioner is presently of good moral character and has demonstrated good moral character from the year preceding the filing of his application to the present. Criminal conduct and other behavior prior to the one-year period may be examined. Whether the petitioner can establish that he has reformed and rehabilitated from this prior conduct is germane to the determination of whether he has established good moral character from the beginning of the one-year period to the present.

*Santamaria–Ames*, 104 F.3d at 1132.

The court further supported this conclusion by referencing § 1427(e)'s provision

permitting the INS to consider an applicant's conduct prior to the general five year period under § 1427(a), reasoning that "[w]hen applied to section 1440 'that period' refers to the one-year regulatory period." *Id.* In reaching this conclusion, the court flatly stated, without explanation, that "servicemen and servicewomen are not exempt from section 1427's good moral character requirements." *Id; see also In re Kovacs,* 476 F.2d at 844 n. 2 ("[Section] 1427(e) provides that the petitioner's conduct prior to the five year period *may* be considered in determining whether the petitioner has met his burden of establishing good moral character.") (emphasis added); *Tieri v. INS,* 457 F.2d 391, 393 (2d Cir. 1972) (consideration of petitioner's prior acts relevant "to determine whether he had ... reformed."); *Chan v. INS,* 00 MC 243, 2001 WL 521706, at *7 (E.D.N.Y. May 11, 2001) ("In assessing whether an applicant has established good moral character, the applicant's conduct and acts at any [earlier] time may also be considered ... to the extent that prior conduct may appear relevant to a determination of the applicant's present moral character. In that regard, the Court may consider whether there has been a reform of character from an earlier period.") (citations and quotation marks omitted).

In *Castiglia v. INS,* 108 F.3d 1101 (9th Cir.1997), the court cited to *Santamaria–Ames* for the proposition that "war veterans are not exempt from [the] good moral character requirement of § 1427," and to *Yuen Jung,* "requiring a war veteran to prove his good moral character at the date of filing his petition for naturalization." *Castiglia,* 108 F.3d at 1102. Notably, the court did not comment on whether reference to *Santamaria–Ames* was simply intended to acknowledge the application of the one year regulatory period or whether there was some separate statutory basis for this conclusion, and its reference to

*Yuen Jung* is somewhat puzzling since that case entailed the language of former §§ 724 and 724a.

In any event, having concluded that § 1440 requires at least a present showing of good moral character, the court in *Castiglia* had little difficulty disposing of the principal issue in that case—whether the applicability of § 1101(f)(8), barring a finding of good moral character for a person "who *at any time* has been convicted of an aggravated felony," is dependent on whether the felony was committed during a stated statutory period of time. 8 U.S.C. § 1101(f)(8) (emphasis added). Noting that the usual meaning of the phrase "at any time" is "at any time at all," the court construed "at any time" to provide for an "unconstrained time period to apply to the condition 'convicted of an aggravated felony.'" *Id.* at 1103. It bolstered its conclusion by pointing out that "[w]hen Congress wanted to refer to specified periods of time in other sections of the code, Congress did not use 'at any time,' but instead wrote 'during such period,'" citing as examples §§ 1101(f)(5) and 1101(f)(7). *See Castiglia,* 108 F.3d at 1103 ("In contrast [to §§ 1101(f)(5) and (f)(7)], § 1101(f)(8) does not limit the preclusive effect of having been convicted of an aggravated felony to 'such period', but rather bars from proving good moral character an applicant who at *any time* has been convicted of an aggravated felony.") (emphasis in original); *see also Petition of Siacco,* 184 F.Supp. 803, 805 (D.Md.1960) (holding that § 1101(f)(8) is a "special case" among the statutory bars, and serves as a "perpetual bar"). *But see United States v. Santillan–Garcia,* No. 00 CV 6873, 2001 WL 1442396, at *3 (N.D.Ill. Nov.14, 2001) ("Under section 1101 [(f)(8)], a person cannot establish good moral character, if during the statutory period, he is or was 'convicted of an aggravated felony....'").

## II. The Court's View

 Assuming that § 1440 does indeed require a showing of good moral character at some point in time, the Court fully agrees with the Ninth Circuit's reasoning that § 1101(f)(8) constitutes a total bar to naturalization for a person who has at any time been convicted of an aggravated felony.

As for the requisite statutory good moral character, neither Judge Weinfeld in *Suey Chin,* then Judge Marshall in *Pignatello,* nor the Ninth Circuit in *Santamaria–Ames* or in *Castiglia* explained why good moral character is required under § 1440, even though it cannot be deemed to attach to any particular stated period of time. Although the Court also views § 1440 as requiring a showing of good moral character, it believes a specific explication and rationale is indicated in lieu of the good moral character assumption underlying these decisions.

Section 1427(a)(3) has two prongs: An applicant must demonstrate that he has been of good moral character during the five-year residency period *and* that he "*still is* a person of good moral character...." 8 U.S.C. § 1427(a)(3) (emphasis added). Section 1440(b)(2)'s elimination of the residence requirement undoubtedly relieves the war veteran from the mandate of establishing his good moral character throughout the five-year period under § 1427(a)(3), but because § 1440(b) incorporates all other provisions of Subchapter III, § 1440(b)(2) does not eliminate the residual requirement that the applicant "still is a person of good moral character [.]" Because the word "still" embodies a sense of currency, the Court views it as applying to the applicant's moral character from the date of the filing of the application until it is finally resolved.

Boatswain does not cite any case where the immigration laws have been interpreted to wholly exempt veterans from demonstrating good moral character; moreover, the Court's research has failed to reveal any such authority. Rather, for his statutory argument, he relies on the difference between §§ 1440 and 1439 in that the latter explicitly references good moral character in reference to peacetime veterans, unlike the wartime veteran statute. His argument is flawed. The mention of good moral character in § 1439(e) simply relates to the requirement to furnish records of honorable service during the three-year period. Because § 1440 requires good moral character only at the time of filing, the need for records of the requisite three-year period of service under § 1439(e) is not implicated.

An historical analysis of the earlier veteran naturalization statutes supports the Court's reading of § 1440. In its changes to former § 724a, Congress left in place the incorporation of the other requirements of the former Act, including former § 707(a)'s requirement that an applicant demonstrate that he "still is ... of good moral character." 8 U.S.C. § 707(a) (1940). This structure was carried over intact into § 1440 and its incorporation of § 1427(a)'s identical requirement. The elimination of former § 724a (b)(4)'s affidavit requirement simplified the naturalization process for war veterans, but did not eliminate the incorporation of the present good moral character requirement.

The Court's interpretation of § 1440 is in accord with the Ninth Circuit's interpretation of former § 724a in *Yuen Jung.* There, noting that the affidavit requirement of § 724a required that each "witness personally knows the petitioner to be a person of good moral character," 8 U.S.C. § 724a (b)(4) (1948), the Ninth Circuit concluded that it was "the deliberate intention of Congress to make *only present good moral character relevant*" for

wartime veterans. *Yuen Jung*, 184 F.2d at 495 (emphasis added).

The Court's reading of § 1440 is further bolstered by an examination of other sections of Subchapter III exempting certain other classes of naturalization applicants from § 1427(a)'s residency requirements, without having the effect of eliminating § 1427(a)'s good moral character requirement. For example, § 1430(b), which governs naturalization for persons who marry American citizens engaged in certain types of business abroad, exempts applicants from § 1427(a)'s residency requirement. *See* 8 U.S.C. § 1430(b) (applicants "may be naturalized upon compliance with all the requirements of the naturalization laws, except that no prior residence or specified period of physical presence within the United States ... shall be required"). Courts interpreting § 1430(b) have held, however, that regardless of the residency exemption, good moral character is still statutorily required. *See Petition for Naturalization of K.*, 174 F.Supp. 343, 345 (D.Md.1959) ("[I]t is by no means clear that when [§ 1430(b) ] eliminated [§ 1427(a)'s] requirement of five years prior residence it intended also to eliminate the five year period [under § 1427(a)] during which a petitioner is required to have been a person of good moral character...." "[Although it] is clear that [§ 1430(b)] has eliminated ... some ... of the requirements of [§ 1427(a),] [i]t is still required that petitioner [demonstrate] good moral character ....") (internal quotation marks omitted); *Petition for Naturalization of B.*, 156 F.Supp. 761, 762 (D.Md.1957) (same).

The Court cannot accept that Congress intended to jettison a good moral character requirement for wartime veterans. To hold otherwise would allow those who have committed serious crimes subsequent to their discharge from service, to naturalize.

The Court does not believe Congress could have intended such a result. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 241, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) ("We need not leave our common sense at the doorstep when we interpret a statute."). Accordingly, because Boatswain is required to establish his good moral character, he is barred under § 1101(f)(8) from naturalizing.

■ In so holding, the Court rejects Boatswain's alternative contention—that applying the aggravated felony bar to him would have an impermissible retroactive effect because at the time he served in the military, from 1975–1976, his crimes would not have triggered such a bar. "[E]very statute, which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective[.]" *Landgraf v. USI Film Products*, 511 U.S. 244, 269, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). There is no retroactive effect to subjecting Boatswain to the statutory aggravated felony bar. The crimes that now bar his application were committed under the current statutory scheme. Any disability placed upon Boatswain by § 1101(f)(8)'s bar was created by his conduct *after* the bar was enacted. Furthermore, Boatswain never had a "vested right" to naturalize. *See generally Tutun v. United States*, 270 U.S. 568, 578, 46 S.Ct. 425, 70 L.Ed. 738 (1926) ("The opportunity to become a citizen of the United States is said to be merely a privilege, and not a right.").

### III. The Individualized Assessment

■ If the Court were to have determined that § 1101(f)(8) did not bar Boatswain from an individualized assessment of his good moral character, he would, none-

388

theless, not be entitled to naturalize because he has failed to demonstrate his good moral character.

"Good moral character ... was intended by Congress to mean a broad attachment to the principles of the Constitution of the United States, and disposition to the good order and happiness of the United States." *Sugarman v. Dougall,* 413 U.S. 634, 660, 93 S.Ct. 2842, 37 L.Ed.2d 853 (1973) (Rehnquist, J. dissenting). As noted, the Court may consider a petitioner's prior acts "to determine whether he [has] ... reformed." *Tieri,* 457 F.2d at 393; *see also Santamaria–Ames,* 104 F.3d 1127.

The Court is cognizant of Boatswain's honorable service to this country during the Vietnam War and of his dedication to his children. Nevertheless, Boatswain has failed to overcome the fact that over the last two decades his criminal record demonstrates his consistent involvement in narcotics distribution. Despite his numerous convictions, Boatswain time and again returned to selling drugs. The Court is not satisfied that he has now, at this late date, reformed of character.

## CONCLUSION

The order of the INS denying Boatswain's application for naturalization is affirmed.[7]

**SO ORDERED.**

7. The Court expresses its appreciation to the Washington Square Legal Services for accepting assignment of counsel and commends counsel for the provocative and challenging quality of its representation.